UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECLAIM THE RECORDS and ALEC FERRETTI,

    Plaintiffs,

    -v-

UNITED STATES DEPARTMENT OF STATE,

    Defendant.

23 Civ. 1471 (JMF)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2785
Fax: (212) 637-2702
Email: joseph.pantoja@usdoj.gov

JOSEPH A. PANTOJA
Assistant United States Attorney, *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.    The Department's Birth and Death Records for the Panama Canal Zone ................2

    B.    The Department's Electronic Database for Passport Records .................................4

    C.    The FOIA Request ....................................................................................................6

ARGUMENT .................................................................................................................................6

THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE DEPARTMENT BECAUSE THE AGENCY HAS DEMONSTRATED THAT ITS SEARCH WAS REASONABLE AND ADEQUATE ....................................................6

    A.    Summary Judgment Standard ...................................................................................6

    B.    The Department's Search Was Reasonable and Adequate .......................................8

    C.    Responding to the FOIA Request Would Require the Department to Create a Record, Which Cannot Be Compelled Under FOIA ................................9

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

PAGE(S)

Cases:

*ACLU Immigrants' Rights Project v. U.S. Immigration & Customs Enforcement*,
  58 F.4th 643 (2d Cir. 2023) ............................................................................................. 13, 14
*Amnesty Int'l USA v. CIA*,
  No. 07 Civ. 5435 (LAP), 2008 WL 2519908 (S.D.N.Y. June 19, 2008) .................................. 8
*Arab Anti-Discrimination Comm. v. US. Dep't of Homeland Sec.*,
  516 F. Supp. 2d 83 (D.D.C. 2007) ........................................................................................... 8
*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994) ................................................................................................... 6, 7
*Cunningham v. U.S. Dep't of Justice*,
  40 F. Supp. 3d 71 (D.D.C. 2014) .............................................................................................. 8
*Earle v. U.S. Dep't of Justice*,
  217 F. Supp. 3d 117 (D.D.C. 2016) .......................................................................................... 7
*Espino v. U.S. Dep't of Justice*,
  869 F. Supp. 2d 25 (D.D.C. 2012) ............................................................................................ 8
*Ferguson v. F.B.I.*,
  No. 89-cv-5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) ........................................ 2
*Forsham v. Harris*,
  445 U.S. 169 (1980) .......................................................................................................... 10, 14
*Garcia v. United States Dept't of Justice*,
  181 F. Supp. 2d 356 (S.D.N.Y. 2002) ....................................................................................... 9
*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ................................................................................................. 6, 7
*Hawkinson v. Executive Office for Immigration Review*,
  No. 21-11817-MPK, 2023 WL 5153768 (D. Mass. Aug. 10, 2023) ...................................... 11
*Jenkins v. U.S. Dep't of Justice*,
  263 F. Supp. 3d 231 (D.D.C. 2017) .......................................................................................... 7
*Johnson v. Central Intelligence Agency*,
  330 F. Supp. 3d 628 (D.Mass. 2018) ...................................................................................... 12
*Landmark Legal Foundation v. Department of Justice*,
  211 F.Supp.3d 311 (D.D.C. 2016) .......................................................................................... 11
*Long v. Office of Pers. Mgmt.*,
  692 F.3d 185 (2d Cir. 2012) ..................................................................................................... 6
*MacLeod v. United States Department of Homeland Security*,
  No. 15-cv-1792 (KBJ), 2017 WL 4220398 (D.D.C. Sept. 21, 2017) ....................................... 7
*N.Y. Times Co. v. U.S. Dep't of Justice*,
  756 F.3d 100 (2d Cir. 2014) ..................................................................................................... 7
*Nat'l Sec. Counselors v. CIA*,
  898 F. Supp. 2d 233 (D.D.C. 2012) ........................................................................................ 12
*New York Times Co. v. U.S. Dep't of Justice*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012) ....................................................................................... 2

*People for the Am. Way Found. v. U.S. Dep't of Justice*,
   451 F.Supp.2d 6 (D.D.C. 2006) ............................................................................................. 12
*Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*,
   585 F.2d 1382 (2d Cir. 1978) ................................................................................................ 10
*Reyes v. United States Environmental Protection Agency*,
   991 F. Supp. 2d 20 (D.D.C. June 13, 2014) ............................................................................ 7
*United States Dep't of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) ............................................................................................................... 10
*Whitaker v. Department of Commerce*,
   970 F.3d 200 (2d Cir. 2020) .................................................................................................... 7

Rules:

Federal Rule of Civil Procedure 56 ............................................................................................... 6

Defendant United States Department of State (the "Department"), by its attorney, Damiam Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In their complaint, ECF No. 1 ("Complaint" or "Compl."), plaintiff Alec Ferretti and Reclaim the Records (collectively, "Plaintiff") commenced this action under the Freedom of Information Act ("FOIA") to compel the Department to produce "a copy of the **index** to all birth and death records held by the State Department for the Panama Canal Zone." ECF No. 1-1 at 1 (emphasis in original); see also Compl. ¶ 9. Plaintiff clarified that he is seeking the "index" to such records for persons born between 1904 and 1979 in the Panama Canal Zone ("PCZ") as referenced in a Department records disposition schedule. ECF No. 1-8, at 1. The Department completed its search and no responsive records were found, *i.e.*, no such index of the PCZ records exists. To the extent that Plaintiff's FOIA request amounts to a demand that the Department create such an index, such a demand conflicts with FOIA's mandate that an agency not be compelled to create new documents to satisfy a FOIA request. Accordingly, this Court should grant summary judgment in the Department's favor.

# BACKGROUND[1]

### A.   The Department's Birth and Death Records for the Panama Canal Zone

The Department maintains birth and death records for the PCZ as paper records. *See* Declaration of Regina L. Ballard, dated October 23, 2023 ("Ballard Decl.") ¶ 10. These records were transferred to the Department in December 1999 by the Panama Canal Commission, who previously maintained those records. *Id*. The Department has a total of 48 boxes of PCZ birth records, and each box contains approximately 1,400 index cards for a total of approximately 67,200 index cards. *See id*. ¶ 11. Similarly, the Department has approximately 20 boxes of PCZ death records, and each box contains approximately 1,400 index cards for a total of approximately 28,000 index cards. *See id*. ¶ 12. The Department does not maintain, in paper or electronic form, a list or "index" of the birth and/or death records for the PCZ for any date range. *See id*. ¶ 13.

The schedule in ECF No. 1-8 describes "A-13-001-15f Vital Records File" as "Index of Panama Canal Zone Birth Certificates, adoption records and related documents for persons born between 1904 and 1979 in the [PCZ] or in hospitals administered by the U.S. Government in Panama City and Colon." ECF No. 1-8 at 13. This description is followed by the note, "g. Index Card file." *Id*. The archive status for these records was noted as "Permanent" with "Transfer to National Archives with records covered by A-13-001-15d," *id*., which entry in turn notes "Transfer to National Archives upon acceptable scanning to digital storage medium," *id*. Entry

---

[1] While typically this district requires parties to submit Local Rule 56.1 statements in support of motions for summary judgment, " '[t]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment,' and Local Rule 56.1 statements are not required." *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (quoting *Ferguson v. F.B.I.*, No. 89-cv-5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), aff'd 83 F.3d 41 (2d Cir. 1996)).

A-13-001-15f's reference to "Index of Panama Canal Zone Birth Certificates, adoption records and related documents for persons born between 1904 and 1979 in the [PCZ] or in hospitals administered by the U.S. Government in Panama City and Colon" is to the previously-referenced 48 boxes birth-related records maintained as a collection of index cards, as opposed to an "index" *per se*. *See* Ballard Decl. ¶ 14. These birth-related records have not been scanned or digitized. *Id*.

The schedule in ECF No. 1-8 describes "A-13-001-15i Vital Records Files" as "Index of Panama Canal Zone Death Certificates for persons who died between 1904 and 1979 in the [PCZ] or in hospitals administered by the U.S. Government in Panama City or Colon." *See* ECF No. 1-8 at 14. This description is likewise followed by the note, "h. Index Card file." *Id*. The archive status for these records was noted as "Permanent" with "Offer to National Archives with records covered by A-13-001-15g." *Id*. The entry for A-13-001-15g, in turn, notes "Transfer to National Archives once records have been successfully digitally imaged." *Id*. at 13. Entry A-13-001-15i's reference to "Index of Panama Canal Zone Death Certificates for persons who died between 1904 and 1979 in the [PCZ] or in hospitals administered by the U.S. Government in Panama City or Colon " is to the previously-referenced 20 boxes of death records maintained as a collection of index cards, as opposed to an "index" *per se*. *See* Ballard Decl. ¶ 15. These death-related records have not been scanned or digitized. *See id*.

Plaintiff also referred Department counsel to another copy of a Department records retention schedule as of "2/9/2021," which Plaintiff had retrieved from https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-state/rg-0059/n1-059-04-002_sf115.pdf.  *See* Ballard Decl. ¶ 16; *see id*. Ex. 2 (copy of that schedule ("2/9/2021 Schedule")).  The information contained in the 2/9/2021 Schedule corresponding to

3

entries A-13-001-15f and A-13-001-15i in ECF No. 1-8 is unchanged except that those entries were renumbered to A-13-000-15g and A-13-000-15j, respectively. *See* Ballard Decl. ¶ 17; *id*. Ex. 1 at 13, 14. Accordingly, the term "Index" used in the foregoing records disposition schedules identified by Plaintiff referred to boxes of index cards, not to a separate list or index of such index cards, in whole or in part. *See* Ballard Decl. ¶ 18.

While the referenced physical index card files for birth- and death-related records for persons born between 1904 and 1979 in the PCZ exist, they are in the form of approximately 67,200 and 28,000 individual index cards, respectively, that can only be retrieved manually and one-at-a-time, *i.e.*, the Department must search these records by using personally identifiable information, including the name and date of birth of an individual, to locate a particular birth or death record for the PCZ. *See* Ballard Decl. ¶ 19. A Department employee would also need to examine each index card individually to determine whether the information could be released in accordance with the Privacy Act. *See id*.

**B.      The Department's Electronic Database for Passport Records**

In 1978, the Department began microfilming Passport records. *See* Ballard Decl. ¶ 20. These records were stored in a system called the Passport File Miniaturization ("PFM") database. *See id*. These microfilmed records, however, did not include PCZ records, which the Department did not receive until 1999. *See id*. 21.In 1999, the Department began digitizing the passport records in PIERS (Passport Information Electronic Records System), which replaced PFM in 2000. *See id*. ¶ 21. The PFM database is now defunct, and any electronic indexes the PFM database employed are not available in PIERS. *Id*. Although the Department attempted to import some of the PCZ data to PIERS, the data entry of the records was of such poor quality that it abandoned the effort and decided to preserve them in their paper form instead. *See id*.

The Department does not rely on PIERS as a database of verified passport records, and especially of records for the PCZ. *See* Ballard Decl. ¶ 22. PIERS is a system that the Department uses to help Passport officials answer questions regarding Passport applications and not as an electronic database housing all of its official Passport records. *See* Ballard Decl. ¶¶ 23, 27. Rather, the Department relies on the paper index cards as its official birth and death records for the PCZ. *See id*. ¶ 27. There is no accompanying index—in paper or electronic form—of those records. *See id*. This is in part because each migration—first to the microfilm in PFM and then to digital images in PIERS—introduced a risk of inaccurate data transfer. *See id*.

PIERS does not contain any sort of "index" or list of passport records, including for the PCZ, that a system user can simply pull. *See* Ballard Decl. ¶ 23. That is not a functionality available to the Department through PIERS at this time, nor has such functionality ever been available to the Department through PIERS. *See id.* A system user must instead input an individual's personal identifiable information, such as a name or date of birth, to retrieve information on a person-by-person basis from PIERS. *See id*. The Department official must then undertake a lengthy process to ensure that the information in PIERS matches the information in the actual digitized record for the individual in question. *See id*.

Plaintiff has also referred Department counsel to a System of Records Notice ("SORN") dated July 6, 2011, for the Department's passport records to suggest that an electronic index for PCZ birth and death records must or should exist. *See* Ballard Decl. ¶ 24; *id*. Ex. 2 (attaching copy of referenced SORN). The July 6, 2011, SORN for passport records refers to "an electronic index of department of State Reports of Birth of American Citizens abroad," not to any index of PCZ records. *See* Ballard Decl. ¶ 24 and Ex. 2 at 39467. The reference to an "electronic index" is also only to the set of digital versions of the referenced records and not to an index or list of such

records. *See* Ballard Decl. ¶ 24. The Department does not maintain an "index" in PIERS or elsewhere that Department staff can pull, print or otherwise generate that is responsive to FOIA request F-2017-14380. *See id.* ¶ 25.

C.     **The FOIA Request**

In 2017, Plaintiff submitted a FOIA request to the Department for "a copy of the **index** to all birth and death records held by the State Department for the Panama Canal Zone." ECF No. 1-1; *see also* Ballard Decl. ¶¶ 5-6 & Ex. 1 (emphasis in original). In June 2021, Plaintiff clarified that he was referring to language in the Department's records disposition schedule that related to birth and death records of "persons born between 1904 and 1979 in the Panama Canal Zone." *See* ECF No. 1-8 at 2, 13-14; *see also* Balland Decl. ¶ 7. By letter dated April 13, 2023, the Department informed Plaintiff that it does not have an index of birth and/or death records for the PCZ and that it otherwise had no records responsive to FOIA Request F-2017-14380. *See* Balland Decl. ¶ 30 and Ex. 3.

<div align="center">ARGUMENT

**THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE DEPARTMENT BECAUSE THE AGENCY HAS DEMONSTRATED THAT ITS SEARCH WAS REASONABLE AND ADEQUATE**</div>

A.     **Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is the procedural vehicle by which most FOIA actions are resolved. *See, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812). A search is judged by the efforts the agency undertook, not by its results. *See Grand Cent. P'ship v. Cuomo*, 166 F.3d 473,

489 (2d Cir. 1999); *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014). The agency must simply demonstrate that its search was "reasonably calculated to discover the requested documents." *Grand Cent. P'ship*, 166 F.3d at 489. In other words, the search "need not be perfect, but rather need only be reasonable." *Id*. Generally, the agency need only provide "[a]ffidavits or declarations" with supporting facts to show that it has conducted an adequate search under FOIA. *Carney*, 19 F.3d at 812. Such affidavits or declarations are accorded a presumption of good faith, and the Court may award summary judgment on them alone. *Id*.

An agency may satisfy its burden of demonstrating an adequate search through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812 (footnote omitted). When "'[i]t is clear beyond cavil that an agency cannot improperly withhold records that it does not maintain, and that 'where the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all.'" *Whitaker v. Department of Commerce*, 970 F.3d 200, 207 (2d Cir. 2020) (quoting *MacLeod v. United States Department of Homeland Security*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *11 (D.D.C. Sept. 21, 2017) (alterations omitted) (*quoting Reyes v. United States Environmental Protection Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. June 13, 2014)); *see also Whitaker*, 970 F.3d at 208 ("We see no reason to depart from the sensible and persuasive approach employed by the courts that have considered this question, and we therefore conclude that an agency need not conduct a search that it has reasonably determined would be futile."); *Jenkins v. U.S. Dep't of Justice*, 263 F. Supp. 3d 231, 235 (D.D.C. 2017) (where an agency demonstrates it is unlikely to possess responsive records, it is not required to conduct a search); *Earle v. U.S. Dep't of Justice*, 217 F. Supp. 3d 117, 123–24 (D.D.C. 2016)

(granting summary judgment for agency where declarant explained that the agency did not maintain the records sought); *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 85–86 (D.D.C. 2014) (granting summary judgment for agency where the agency demonstrated that a search would be futile because it does not maintain the requested records*); Espino v. U.S. Dep't of Justice*, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) (granting summary judgment to the agency where it submitted "sufficiently detailed and nonconclusory" declarations "to demonstrate the adequacy of its search"); *Amnesty Int'l USA v. CIA*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008) (no search required where declarations of agency officers reasonably describe that, based on their knowledge of their offices, they would not have responsive records); *Am.-Arab Anti-Discrimination Comm. v. US. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007) (FOIA does not require a search for records an agency does not maintain).

**B.     The Department's Search Was Reasonable and Adequate**

The Department maintains birth and death records for the PCZ as paper records. *See* Ballard Decl. ¶¶ 10-12. Specifically, the Department maintains approximately 40 and 20 boxes of index cards for such records, respectively, consisting of appropriately 95,200 index cards in total. *Id*. ¶¶ 11-12. The Department inquired with knowledgeable persons whether the requested record existed and confirmed that the Department does not maintain, in paper or electronic form, a list or "index" of such records, that all files likely to contain relevant records were searched and yielded no such record, and that such an index otherwise does not exist. *Id*. ¶¶ 10-31.

The Department confirmed that any reference to an "index" concerning PCZ birth and/or death records in the Department's records disposition schedules provided by Plaintiff was to the index card file consisting of the afore-mentioned boxes of index cards of PCZ birth and death

records and not to any index *per se*. *See* Ballard Decl. ¶¶ 13-18. The Department also confirmed that the July 6, 2011 SORN referenced by Plaintiff, which alluded to an "an electronic index of department of State Reports of Birth of American Citizens abroad," did not refer to any index of PCZ records but rather to a digital version of the referenced records and not to an index or list of such records. *See id*. ¶ 24.

The Department explained that it relies on the paper index cards as its official birth and death records for the PCZ. *See* Ballard Decl. ¶ 27. Specifically, while the Department uses its electronic database PIERS "as a tool to allow internal staff to answer file questions relating to passport records," that database "does not contain any sort of 'index' or list of passport records, including for the PCZ, that a system user can simply pull," and such functionality is not—and has never been—available to the Department through PIERS, whose records are generally available on a person-by-person basis using personal identifiable information. *Id*. ¶¶ 23, 27. The Department also confirmed that it does not maintain an "index" in PIERS that Department staff can pull, print or otherwise generate that is responsive to FOIA request F-2017-14380. *See id*. ¶ 25.

Having considered how it maintains records for the PCZ, the Department searched the files likely to contain responsive records if they exist, and confirmed that no "index" or list of such records exists, *see* Ballard Decl. ¶¶ 10-31, the Department's search was adequate. *See, e.g.*, *Garcia v. United States Dept't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002).

C.   **Responding to The FOIA Request Would Require the Department to Create a Record, Which Cannot Be Compelled Under FOIA**

To the extent Plaintiff is requesting that the Department create such an index, the Complaint should be dismissed. To qualify as an agency record under FOIA, a record must satisfy "two requirements": the agency must "either create or obtain" the record, and "the agency

9

must be in control of the requested material at the time the FOIA request is made." *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989). FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Id.* It is well-established that agencies are not required to "create" records in response to a FOIA request. *See, e.g.*, *Forsham v. Harris*, 445 U.S. 169, 186 (1980) ("FOIA imposes no duty on [an] agency to create records."); *Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*, 585 F.2d 1382, 1388 (2d Cir. 1978) ("[U]nder the FOIA, an agency does not rewrite a document or create informational material. It discloses existing documents, which it has already prepared.").Accordingly, FOIA does not require the Department to create an index of PCZ's birth and death records where no such record exists.

As explained by the Department's declarant, requiring the Department to produce an index of birth and death records for the PCZ would require the Department to create a new record that does not currently exist. *See* Ballard Decl. ¶ 19. FOIA simply does not require agencies to undertake that burden. The work entailed in responding to the FOIA request by producing indexes for PCZ birth and death records, even if limited to persons born between 1904 and 1979, underscores that Plaintiff is seeking the creation of new records. While the referenced index-card files for PCZ birth and death records exist, they are in the form of approximately 67,200 and 28,000 individual index cards, respectively, which can only be retrieved manually, *i.e.*, one-at-a-time using personally identifiable information. *Id*. Creating an index of these voluminous paper records would require many man-hours even to create index entries corresponding to each of the over 95,000 index cards in question. *Id*.

Nor is there currently a mechanism in place for the Department to create such an index electronically. Specifically, the Department does not maintain an "index" in PIERS that a user

10

can simply pull, print or otherwise provide to Plaintiff that is responsive to FOIA request F-2017-14380. *See* Ballard Decl. ¶ 25. Rather, a user must logon to PIERS and input individual personally identifiable information—such as an individual's name, date of birth, or social security number—to search for and retrieve records one-at-a-time using PIERS. *See id*. ¶ 23. Even if an IT specialist could manipulate PIERS to extract, for the first time since PIERS has been operational, some list of birth and death records for persons born between 1904 and 1979 in the PCZ, the Department could not rely on that list as containing accurate data. *See id*. ¶ 26. Rather, the IT specialist would have to do a bulk pull of this information, and then a Department Passport analyst would need to verify that the data pulled matched the actual information in the digitized record for the individual in question. *Id*. Undertaking this exercise for birth and death records for persons born between 1904 and 1979 would take years to complete. *Id*.

The principle that FOIA does not require an agency to create records applies to records maintained electronically. FOIA does not require an agency to reprogram a database to create records that the database would not otherwise be capable of generating. *See, e.g., Hawkinson v. Executive Office for Immigration Review*, No. 21-11817-MPK, 2023 WL 5153768, at *9 (D. Mass. Aug. 10, 2023) (observing that "courts have repeatedly found that agencies are excused from creating files or database indices for FOIA requesters," and holding "Defendant was therefore not obligated to create a new index file in order to search the BIA Shared Drive by keyword as plaintiff requested." (citing cases)); *Landmark Legal Foundation v. Department of Justice*, 211 F.Supp.3d 311, 318 (D.D.C. 2016) ("Plaintiff may want a list of DOJ employees who use personal email for Department business, but FOIA only entitles it to such a list if the Department already has one—it does not require the Department to create one.").

11

As explained by a district court considering an analogous FOIA request and holding that it amounted to the creation of a new record:

> *Producing a listing or index of records . . . is different than producing particular points of data (i.e., the records themselves).* This is because a particular listing or index of the contents of a database would not necessarily have existed prior to a given FOIA request . . . .The same would be true of paper, rather than electronic, records. For example, if a FOIA request sought 'an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis,' an agency need not create an inventory if one did not already exist, though the agency would need to release any such non-electronic records themselves if they were requested and were not exempt from disclosure. Therefore, a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index.

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 271 (D.D.C. 2012) (citation omitted; emphasis added).[2] Significantly, Plaintiff's FOIA request here did not seek production of any PCZ records; rather, Plaintiff specifically sought the index for such records, which does not exist. *See, e.g., People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F.Supp.2d 6, 15 (D.D.C. 2006) (producing a "list of records returned from [a database] search" is "something that FOIA does not mandate" because "the list was not previously created or obtained by the agency" and "an order that defendant produce such a list would be tantamount to requiring the defendant to create an agency record"); *cf. Johnson v. Central Intelligence Agency*, 330 F. Supp. 3d 628,

---

[2] In this case, a non-profit had challenged the refusal of the Central Intelligence Agency ("CIA") to turn over records in response to plaintiff's request under FOIA. Among these were "(1) a request for 'database listings of all FOIA requesters from Fiscal Years 2008-2010 according to the fee categories to which CIA assigned them,' and (2) a request for 'a record that would indicate the ten individuals responsible for the most FOIA requests submitted (each) in Fiscal Years 2008, 2009, and 2010.'" *Id*. at 268-69. The CIA declined to produce these records because its "record systems are not configured in a way that would allow [it] to perform a search reasonably calculated to lead to the responsive record without an unreasonable effort.'" *Id*. at 245. The CIA contended that "processing requests for database listings would (a) require it to create new records, as opposed to merely producing preexisting records and/or (b) require it to conduct research, as opposed to merely performing a search." *Id*. at 269.

643 (D.Mass. 2018) ("Thus, while an agency is not compelled to create a new list for a requester, searching for a list that already exists is discoverable through FOIA. The list sought by Dr. Johnson . . . already exists and must be produced. She is not asking the Agency to create a list of user applications, but rather seeks the currently existing list of user applications available on [the CIA's] Twitter's website [account].").

The Second Circuit recently addressed when the manipulation of electronic-based information could amount to record creation that is not required by FOIA. In *ACLU Immigrants' Rights Project v. U.S. Immigration & Customs Enforcement* ("ACLU"), the government refused the ACLU's request to replace "A-Numbers"—a unique number assigned to each individual non-citizen immigrating to the United States, a number that is exempt from disclosure under FOIA—with an anonymized "Unique ID" that would permit the ACLU to track data related to individual (but unidentified) non-citizens across ICE's databases. 58 F.4th 643, 646 (2d Cir. 2023). The district court granted summary judgment for ICE on the basis that ACLU's requested substitutions required creation of new records. *Id*. at 646–47. The Second Circuit reversed. *Id*. at 647. Although ICE maintained event-centric (rather than person-centric) databases, it also "chose[ ]—although it was not required—to have FOIA-exempt A-Numbers function as the sole 'key' or 'code' affording access to electronic data pertaining to individual [non-citizens] from its event-centric databases," and "ICE itself use[d] A-Numbers for that purpose." *Id*. at 647. The court noted that ICE acknowledged that it had the "ability to track a single individual across the various stages of immigration proceedings"—in other words, "although ICE stores immigration data by event, it can, and on an *ad hoc* basis does, access that information in a person-centric manner in the regular course of agency business." *Id*. at 655, 658. "[D]istinguish[ing] between the content of an electronic record and the function it may have been assigned within a computer

13

system," the court reasoned that although the A-Numbers themselves were properly redacted, the function they served was not. *Id*. at 656. ACLU's proposed substitution of Unique IDs—"numbers meaningless in themselves but able to perform the same access function as A-Numbers"—neither "alter[ed] the content of any exempt record" nor "document[ed] any new information" nor "otherwise create[d] any new records." *Id*. at 655–56. "Rather, Unique IDs serve[d] only . . . to preserve a function necessary to afford the public the same person-centric access to non-exempt records that ICE already has." *Id*. at 656.

*ACLU* is distinguishable and otherwise supports the conclusion that requiring the Department to generate an index under the circumstances of this case would amount to record creation that is not required under FOIA. The Department is *not* denying Plaintiff access to non-exempt records already maintained in the agency's database and in a form that is as useful as the form in which the non-exempt records are available to the agency in the regular course of business. That is because the requested record is not already maintained in the Department's database and otherwise does not currently exist for use by anyone, including the agency, in paper or electronic form. It is clear from the Department's declaration that the agency has not maintained an index of PCZ birth and/or death records, *see* Ballard Decl. ¶¶ 10-31, and the FOIA does not obligate the Department to create such an index, *see, e.g., Forsham*, 445 U.S. at 186.

## CONCLUSION

For the foregoing reasons, defendant Department respectfully requests that the Court grant summary judgment in its favor, as set out above, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: October 24, 2023
New York, New York

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for Defendant ATF*

By:   */s/ Joseph A. Pantoja*
JOSEPH A. PANTOJA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2785
Fax:   (212) 637-2702
Email: joseph.pantoja@usdoj.gov