**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECLAIM THE RECORDS and ALEC
FERRETTI,

                         Plaintiffs,

    - against -

UNITED STATES DEPARTMENT OF STATE,

                    Defendant.

                                   **23 Civ. 1471 (JMF)**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
CROSS-MOTION IN SUPPORT OF SUMMARY JUDGMENT**

February 19, 2024

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs*

<u>TABLE OF CONTENTS</u>

I. Preliminary Statement ................................................................................................ 1

II. Statement of Facts .................................................................................................... 2

III. Legal Standard ....................................................................................................... 6

IV. Argument ................................................................................................................ 7

    a.  Standard of Review ............................................................................................ 7

    b.  Reasonableness of Search ................................................................................. 9

        i.  The ability to locate a single record among 95,200 cards strongly suggests the availability of an index .................................................................................... 9

        ii.  The definition of "index" should be construed liberally ............................... 11

        iii.  Database entries comprising an electronic index are relevant to Plaintiff's request and should be searched ............................................................................ 12

        iv.  The Department database can and must export data relevant to Plaintiff's request. .. 13

        v.  Defendants may not decline a search on the basis of its own error ........................... 15

    c.  Providing an index utilizing existing data does not require creation of a new record ...... 16

V. Conclusion .............................................................................................................. 19

## <u>Table of Authorities</u>

**Cases**

*Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643 (2d Cir. 2023) ......................................................................... 12, 16

*Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479 (S.D.N.Y. 2010) ............................................ 11

*Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993) ............................................................. 6

*Assembly of Cal. v. United States Dep't of Commerce*, 968 F.2d 916 (9th Cir. 1992) ................. 14

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ......................................................... 7

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) ................................................. 7

*Hawkinson v. Executive Office for Immigration Review,*
    No. 21-11817-MPK, 2023 WL 515768 (D. Mass. Aug 10, 2023) .......................................... 18

*Immigrant Def. Project v. United States Immigration & Customs Enf't,*
    208 F. Supp. 3d 520 (S.D.N.Y. 2016) ................................................................................... 7, 11

*Knight First Amendment Inst. at Columbia Univ. v Ctrs. for Disease Control & Prevention,*
    560 F. Supp. 3d 810 (S.D.N.Y. 2021) ........................................................................................ 9

*Knight First Amendment Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.,*
    407 F. Supp. 3d 311 (S.D.N.Y. 2019) ...................................................................................... 13

*Landmark Legal Foundation v. Department of Justice*, 211 F. Supp. 3d 311 (D.D.C. 2016) ...... 18

*Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177 (2d Cir. 1988) .............................. 7

*Long v. Cent. Intelligence Agency*, No. 15-cv-1734 (TSC),
    2019 WL 4277362 (D.D.C. Sep. 10, 2019) ............................................................................. 12

*Long v. OPM*, 692 F.3d 185 (2d Cir. 2012) .................................................................................... 7

*NAACP Legal Def. & Educ. Fund, Inc. v Dep't of Justice,*
    463 F. Supp. 3d 474 (S.D.N.Y 2020) ......................................................................................... 8

*Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency,*
    877 F. Supp. 2d 87 (S.D.N.Y. 2012) .......................................................................................... 8

*Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F. Supp. 2d 233 (D.D.C. 2012). .... 16, 17

*People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6 (D.D.C. 2006) ....... 19

*Petroleum Info. Corp. v. United States Dep't of Interior*,
    298 U.S. App. D.C. 125, 976 F.2d 1429 (1992) ...................................................... 14

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79 (2d Cir. 2004) ................................. 6

*Rabin v. United States Dep't of State, CIA*, 980 F. Supp. 116 (E.D.N.Y. 1997) ........................ 7

*Reclaim the Records v. Department of Veterans Affairs*,
    18 Civ. 8449 (PAE), 2020 WL 1435220 (S.D.N.Y. Mar. 24, 2020) ........................................ 14

*SafeCard Servs., Inc. v. SEC*, 288 U.S. App. D.C. 324, 926 F.2d 1197 (1991) ............................ 8

*United States DOJ v. Julian*, 486 U.S. 1 (1988) ............................................................. 7

*Vt. Teddy Bear Co. v. 1-800 Beargram Co*., 373 F.3d 241 (2d Cir. 2004) ................................... 6

*Whitaker v. Dep't of Commerce*, 970 F.3d 200 (2d Cir. 2020) ............................................... 9

**Statutes**

Pub. L. No. 104-231, 110 Stat. 3048 (1996) ................................................................. 16

**Rules**

Fed. R. Civ. P. 56 ........................................................................................ 7

## **I. Preliminary Statement**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§552 *et seq*., seeking the production of indexes to the birth and death records of individuals who were born or who died in the Panama Canal Zone ("PCZ") between 1904 and 1979, maintained and improperly withheld by Defendant United States Department of State ("The Department" or "DOS"), in response to requests by Plaintiff. This action solely seeks the production of the agency-created basic index or internal "finding aid" to these birth and death records, whether those indexes exist on physical index cards or in a modern textual database or both, and does not seek the release of any actual birth or death certificates that were indexed.

The Department maintains a collection of 68 boxes containing approximately 95,200 index cards relating to the records Plaintiff has requested. The Department purports to be able to locate an individual record among those 95,200 cards by first inputting personally identifying information into a Department database to bring up a record, then using that record to manually locate the index card specific to the individual. Plaintiff believes an index would be a necessary tool to allow Department employees to locate one index card among tens of thousands, especially if the cards are organized in anything other than alphabetical order, such as by date or certificate number. Plaintiff also believes the Department database itself functions as an index to these records, insofar as it aids Department employees searching for specific index cards. Either, or both, of these indexes would be pertinent to Plaintiff's FOIA request.

However, despite an initial FOIA request made on July 30, 2017 asking for those indexes, made after Plaintiff Ferretti saw a notice in the Federal Register and a DOS Records Disposition Schedule indicating their existence, and specifically requesting exported database entries, Defendant has denied that such indexes exist.

1

Defendant now asks Plaintiff and this Court to believe that the Department database containing the pertinent entries is incapable of exporting data tables containing the names, dates of birth or death, or whatever other data Department employees rely on when searching for a record among those 95,200 index cards. That contention falls afield of the most fundamental functions of a database – retaining, re-sequencing, and sharing data – and is contradicted by an internal agency document that was shared with Defendant during the extended discussions between counsel that occurred after initiating litigation. This contradiction, along with other inconsistencies in Defendant's presentation, show Defendant has not met its burden at summary judgment.

Plaintiff opposes Defendant's motion for summary judgment because Defendant has not met its burden of demonstrating entitlement to judgment as a matter of law.

Plaintiff seeks an injunction requiring Defendant to release the requested records, which consist of a copy of the indexes to all birth and death records held by the State Department for the Panama Canal Zone from 1904 to 1979, preferably as the underlying data comprising the indexes.

Plaintiff moves for summary judgment because Defendant has failed to claim any valid exemption for the requested records and therefore must disclose the data.

## II. Statement of Facts

On July 30, 2017, Plaintiffs submitted a Freedom of Information Act request to the DOS through its Office of Information Programs and Services asking for a copy of the index to all birth and death records held by the State Department for the Panama Canal Zone (the "Request"). In the request, Mr. Ferretti noted that "typically", such an index is a document

> "alphabetically listing all vital events which took place in a jurisdiction during a specified time period, usually organized by surname or in sequential order. The index typically contains only the names of the individual to whom the record pertains, the date of the document, and/or the certificate number."

2

Declaration of David B. Rankin ("Rankin") <u>Exhibit 1</u> ("<u>Ex. 1</u>"). Mr. Ferretti goes on to note that "These indexes have often been digitized in a searchable database format," and then specifically requests "that this index be sent to me digitally, in a searchable database format, if such database exists." *Id*.

On August 23, 2017, DOS acknowledged the Request. <u>Rankin Ex. 2</u>.

Having received neither the requested records nor a denial of the Request from DOS, on October 23, 2017, Plaintiffs followed up on the status of the Request via email. <u>Rankin Ex. 3</u>.

Two days later, on October 25, 2017, DOS responded by stating that, due to a FOIA backlog, there was a delay in processing the Request and it could take the agency "until September 2019 to complete the processing." <u>Rankin Ex. 3</u>.

On June 13, 2018, Plaintiffs again followed up on the status of the Request by email. Rankin Ex. 4. The same day, DOS again responded by referring to its FOIA backlog and stating, "there is presently a delay in the completion of FOIA and Privacy Act requests," but did not offer a date by which Plaintiffs could expect completion of the Request. <u>Rankin Ex. 4</u>.

Plaintiffs followed up again on January 17, 2019, and on March 8, 2019, DOS responded and stated the Request was in process, once again referred to its FOIA backlog, and again failed to offer Plaintiffs a date by which Plaintiffs could expect the Request to be fulfilled. <u>Rankin Ex. 5</u>.

On December 17, 2019, Plaintiffs once again followed up regarding the Request via email, and the next day DOS responded and stated the request was in process, and again failed to offer Plaintiffs a date by which Plaintiffs could expect the Request to be fulfilled. <u>Rankin Ex. 6</u>.

Plaintiffs once again followed up on May 6, 2021 via email, and a week later, on May 14, 2021, DOS stated the request was in process and that the estimated date of completion was February 14, 2022. <u>Rankin Ex. 7</u>.

On June 10, 2021, a DOS FOIA Analyst emailed Plaintiffs, stating that it was "very difficult to process this request" and requested clarification as to the Request's time frame. Rankin Ex. 8. The same day, Plaintiffs replied and clarified that according to the State Department Disposition of Records for the Panama Canal Zone, the time frame for the requested records was 1904-1979. Rankin Ex. 8. DOS did not acknowledge or reply to this clarification.[1]

By the time Plaintiffs filed the complaint in this action on February 2, 2023, over 2,000 days—five-and-a-half years—had elapsed since they filed the Request with DOS, without DOS denying the Request or producing the records.

On April 13, 2023, 70 days after filing the complaint, the DOS finally emailed Mr. Ferretti, stating that it "has conducted searches and found no responsive records. This completes the processing of your request."  Dkt. 22-4. DOS explained:

> Please note that the Department does not maintain an index or search aid for birth and death records for the Panama Canal Zone. The system where these birth and death records are stored does not contain an index or spreadsheet or allow for the extraction and compilation of certain information from the records stored in the system. Rather, the Department can only retrieve the records stored in the system manually and one-at-a-time, meaning that the Department must search the system using personally identifiable information, including the name and date of birth of an individual, to locate a particular birth or death record for the Panama Canal Zone.

*Id.* The position taken by DOS runs counter to Plaintiffs' understanding of how the PCZ Records are stored and is contradicted by multiple documents found by Plaintiffs.

---

[1] The Ballard Declaration improperly states that "Plaintiff subsequently agreed to limit his FOIA request to records for persons born between 1904 and 1979 in the PCZ." Ballard Dec. ¶ 7. In his correspondence, Mr. Ferretti merely stated that the records, both births and deaths, span 1904-1979, so would include individuals born before 1904 who died between 1904 and 1979. This omission, whether intentional or not, inappropriately reduces the number of potential records responsive to the instant request. See discussion *infra* at p. 15.

A DOS records disposition schedule, which includes records last edited on July 31, 2006 for PCZ birth- and death-related records, includes entries A-13-000-15g and A-13-000-15j. Entry A-13-000-15g Vital Records File's description is "Index of Panama Canal Zone Birth Certificates, adoption records and related documents for persons born between 1904 and 1979 in the Panama Canal Zone or in hospitals administered by the U.S. Government in Panama City and Colon." Dkt. 22-2, p. 13. A-13-000-15j Vital Records File's description is "Index of Panama Canal Zone Death Certificates for persons who died between 1904 and 1979 in the Panama Canal Zone or in hospitals administered by the U.S. Government in Panama City and Colon." *Id.* Both entries are described as "Index Card File." *Id.*

Plaintiffs also supplied DOS with an excerpt from the Federal Register (Vol. 76, No. 129 [July 6, 2011] at 39466-70). In the relevant entry related to DOS, Public Notice 7516 – Privacy Act; System of Records Notice: State-26, Passport Records ("SORN") – it is noted that "Passport Services maintains U.S. passport records for passports issued from 1925 to present, as well as vital records related to births abroad, deaths, and witnesses to marriage abroad." Dkt. 22-3, p. 1. When enumerating the categories of records included in the passport records system, it includes "Panama Canal Zone birth certificates and death certificates," as well as "[a]n electronic index of Department of State Reports of Birth of American Citizens abroad." *Id.*, pp. 1-2. It is noted that these records are stored by "[h]ard copy and electronic media." *Id.* at 3. It is also noted that "[a]ll users [of the passport records system] are given cyber security awareness training." *Id.*

Finally, during discussions between counsel regarding the contents and capacities of the Department's database, on May 5, 2023 Plaintiff's counsel supplied Defendant's counsel with a Privacy Impact Assessment ("PIA") for the Department's "Passport Information Electronic Records System (PIERS)", which is dated 10/2020. Rankin Ex. 9. This document, downloaded

from the Department of State website,[2] contains a section describing how information contained in the database can be shared, with whom and by what mechanisms the information can be shared, and what safeguards are in place to address privacy concerns. *Id.*, pp. 7-9. It also lists the categories of personally identifiable information retained in the dataset (*id.*, p. 2), and discusses the various user roles and access permissions available to Department employees using the database (*id.*, pp. 13-15).

### III. Legal Standard

In ruling on a motion for summary judgment and assessing whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) (inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, and depositions, must be viewed in the light most favorable to the party opposing the motion).

It is the initial burden of a movant to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief as a matter of law. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The non-movant carries only "a limited burden of production," but "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993)).

---

[2] See https://www.state.gov/wp-content/uploads/2020/11/Passport-Information-Electronic-Records-System-PIERS-PIA.pdf, last accessed February 18, 2024.

## IV. Argument

### a. Standard of Review

"FOIA was enacted to promote honest and open government, and to ensure public access to information created by the government in order to hold the governors accountable to the governed." *Long v. OPM*, 692 F.3d 185, 190 (2d Cir. 2012) (internal citations omitted). As the United States Supreme Court has put it, "[t]he mandate of the FOIA calls for broad disclosure of Government records, and for this reason we have consistently stated that FOIA exemptions are to be narrowly construed." *United States DOJ v. Julian*, 486 U.S. 1, 8 (1988) (internal citations omitted). Regarding disclosure, "all doubts [are to be] resolved in favor of disclosure." *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988).

Most FOIA actions are resolved on summary judgment pursuant to Fed. R. Civ. P. 56. *See, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "In evaluating whether to grant a motion for summary judgment in a FOIA action, a district court must review the facts in a light most favorable to the requestor." *Rabin v. United States Dep't of State, CIA*, 980 F. Supp. 116, 120 (E.D.N.Y. 1997).

"A withholding agency that has fulfilled its substantive obligation to produce responsive documents under FOIA can demonstrate the adequacy of its search at the summary judgment stage through the submission of detailed declarations describing the search procedures used. . . . Agency affidavits describing the underlying searches are accorded a presumption of good faith." *Immigrant Def. Project v. United States Immigration & Customs Enf't*, 208 F. Supp. 3d 520, 526-27 (S.D.N.Y. 2016) (internal citations omitted).

7

"Summary judgment is inappropriate 'where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.' In addition, plaintiffs may defeat summary judgment if they can show 'some tangible evidence' that defendants have not satisfied their burden. Where 'an agency has not satisfied its burden, a showing of bad faith is not necessary' in order to defeat a motion for summary judgment." *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) (internal citations omitted).

"The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Id*. at 96. "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant. Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them" *SafeCard Servs., Inc. v. SEC*, 288 U.S. App. D.C. 324, 926 F.2d 1197, 1201 (1991).

"In applying this reasonableness standard, courts consider, among other things, 'the search terms and type of search performed' and the 'nature of the records system or database searched.' … Search terms must 'be reasonably tailored to uncover documents responsive to a FOIA request.'" *NAACP Legal Def. & Educ. Fund, Inc. v Dep't of Justice*, 463 F. Supp. 3d 474, 484 (S.D.N.Y 2020).

"Although an agency need not expand a search beyond the four corners of the language of the request, it must 'adher[e] to the full scope or the precise language of the plaintiff's request'.

And, most importantly, an agency must 'construe [FOIA requests] liberally.'" *Knight First Amendment Inst. at Columbia Univ. v Ctrs. for Disease Control & Prevention*, 560 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) (internal citations omitted).

### b.  Reasonableness of Search

Defendant, through the Ballard Declaration, does not indicate that any material, in physical or digital form, was actually searched pursuant to the Request, with the exception of the concluding nine words of the Declaration: "all files likely to contain relevant records were searched." Dkt. 22, ¶31. Instead, Defendant describes in minimal detail the 68 boxes of paper records it maintains that are relevant to the search request (Dkt. 23, p. 2), discusses why the word "Index" does not actually mean an index (*id.*, pp. 2-4), and describes the limitations a Department employee tasked with answering questions about passport applications would face with the task of searching a Department database for records responsive to the Request (*id.*, pp. 5-6, 9-11). None of these recitations show that a search was actually performed, much less one that could be "reasonably expected to produce the information requested", *Whitaker v. Dep't of Commerce*, 970 F.3d 200, 206-07 (2d Cir. 2020). Instead, in somewhat conclusory language, the Declarant asserts simply that "The Department does not maintain, in paper or electronic form, a list or 'index' of the birth and/or death records for the PCZ." Dkt. 22, ¶13.

### i.  *The ability to locate a single record among 95,200 cards strongly suggests the availability of an index.*

Although Agency declarations are to be accorded a presumption of good faith, the absence of detail regarding the 68 boxes of paper records leaves unresolved questions about how a search of those records could be conducted in the regular course of Department business without an index. Defendant states that these 95,200 cards "can only be retrieved manually and one-at-a-time", Dkt. 23, p. 4, and that "the Department must search these records by using personally identifiable

information, including the name and date of birth of an individual, to locate a particular birth or death record for the PCZ." *Id.* Left unstated here is how such a search can be conducted without some kind of index listing the locations of each record. Reason suggests that records might be arranged by surname, by date of birth, or by record number, but no such detail is provided, and any such arrangement would have significant limitations, as the following scenarios illustrate:

Scenario 1: if only the first name and the date of birth of an individual were known (such as for married women who took their husband's last name), and the birth record cards were organized alphabetically by last name at birth, a search would be fruitless without a way to search by date of birth, such as a chronological index of names organized by birth date. Alternatively, if the cards are organized by record number, some form of index would be required to correlate the individual's personally identifying information to that record number.

Scenario 2: Defendant's description of the DOS Records Schedule (Dkt. 22 ¶14) recites that the file includes "adoption records and related documents" as well as birth certificates. It is not stated how these supplemental documents are organized within the boxes, but the recital here suggests that they are segregated in a way indicating their status as adoption records. The absence of an index would create an additional obstacle when conducting a manual search if, for example, the adoption records are segregated but the adoptive status of the individual is unknown.

An index, by which the individuals in these records were listed using multiple schema (at a minimum: first name, last name, date of birth), would be necessary in many circumstances where incomplete information about the subject of a manual search is available, especially where nearly a hundred thousand records are involved. Plaintiff raises the issue here to point out unanswered questions that arise about the organization of the subject records, and why an index in some form

would rationally be required for efficient management of the records. The Department's conclusory observation that no such index exists begs credulity.

### ii.  The definition of "index" should be construed liberally.

Defendants do not describe what search criteria were used (or not used) here, and obfuscate the use of the term "index" in the SORN as referring to the 68 "boxes of index cards of PCZ birth and death records and not to any index *per se*."[3] Dkt. 23, pp. 8-9. If Defendant wishes to justify its course by relying on a narrow definition of "index", such as a document specifically containing that word in its title, this should be rejected in favor of a liberal construction of the search terms used. *Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 498 (S.D.N.Y. 2010); *Immigrant Def. Project v. United States Immigration & Customs Enf't*, 208 F. Supp. 3d 520, 526 (S.D.N.Y. 2016).

Plaintiff Ferretti's Request suggested, as a typical example of the data he sought, a list of names alphabetized by surname, together with the date or certificate number of the document relating to each name. Dkt. 1-1, p. 2. In essence, he was describing a document abstracting the key terms from a series of individual records and organizing those key terms in some logical sequence or table by which each record could be manually located within the 68 boxes. A search using this broader concept of an "index" would more reasonably be expected to produce the information requested. Even if such an index is not already in printed form (which Plaintiff does not concede is the case), the electronic data entries which would comprise that index must exist, and the materials searched should include those data tables, even if this requires the application of a sophisticated search query to the PIERS database in order to extract the relevant data points. See

---

[3] It is implausible, in Plaintiff's view, that the index cards themselves are the actual birth records and death records rather than, as their very name implies and as they are described in the SORN, an index to the actual birth and death records. Defendant's assertion would require that for the first three quarters of the twentieth century, a time of rapidly-increasing bureaucratization in a geographic location defined by its relation to flows of market capital, such records (as well as "adoption records and related documents", Dkt. 22 ¶¶14-15) were kept on uniformly sized cards that were the same in 1975 as they had been in 1905. This strikes Plaintiff as exceedingly improbable.

*Am. Civil Liberties Union Immigrants' Rights Project v United States*, 58 F.4th 643, 659 (2d Cir. 2023) ("we are mindful that Congress foresaw the need for an agency to apply 'codes or some form of programming' to retrieve records in a requested electronic format, and expressly stated that the use of such codes or programming would 'not amount to the creation of records'"); *see also Long v. Cent. Intelligence Agency*, No. 15-cv-1734 (TSC), 2019 WL 4277362 (D.D.C. Sep. 10, 2019) ("compiling these records does not constitute the creation of a new record.") Defendant should not be permitted to rely on an overly narrow search query, or to avoid searching in locations where responsive records are likely to be found.

### iii.  Database entries comprising an electronic index are relevant to Plaintiff's request and should be searched.

Defendant goes on to describe the limitations of the PIERS database, describing how "a system user must input an individual's personally identifiable information, such as a name or date of birth, to retrieve information on a person-by-person basis from PIERS," Dkt. 23, p. 5, which must then go through "a lengthy process" of verification against the "actual digitized record for the individual in question". *Id*. Alternatively, allowing that it might be possible to extract "some list of birth and death records for persons born between 1904 and 1979 in the PCZ", *id*., p. 11, this data too would need to be verified against "the actual information in the digitized record for the individual in question." *Id.* Defendant's statement that the index cards containing the birth- and death-related records have not been scanned or digitized, Dkt. 23, p. 3, begs the question of what "digitized record" is being used for this verification, and the more pertinent question of whether that record was searched pursuant to Plaintiff's Request.

If the Department is able to locate an individual record within the tens of thousands of records it maintains from the PCZ, and does so through a combination of electronic database and manual search, an index of some type would seem necessary to correlate the index cards to the

corresponding records in digital form which are apparently part of the database. Defendant's thin description of how the PIERS database is used to locate PCZ birth or death records leaves much unexplained.

There is no assertion, however, that the Department lacks the underlying data in electronic form concerning individuals who were born or who died in the PCZ between 1904 and 1979. To the extent this data is contained in the PIERS database system, or some other system maintained by the Department, the obligation to perform that search has not been satisfied here. "An agency must search all locations likely to contain responsive records; not simply where the records are 'most likely' to be found." *Knight First Amendment Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.*, 407 F. Supp. 3d 311, 324 (S.D.N.Y. 2019).

### iv.  The Department database can and must export data relevant to Plaintiff's request.

Defendant asserts that the PIERS system is incapable of exporting more than one record at a time, such as all records within a given category or set of categories. Dkt. 23, pp. 10-11. Such an assertion, if true, would be astonishing, as it would significantly limit the capacity of PIERS to share its data (or selected subsets of its data) with other systems, or to back up its contents in case of a mechanical failure or other vulnerability. A much more credible scenario, in which a Department employee with broader access permissions would be able to export larger quantities of data, sequenced according to specified categories and/or responsive to other search criteria, is posited in the same paragraph of Defendant's Memorandum of Law, though described skeptically: "Even if an IT specialist could manipulate PIERS to extract, for the first time since PIERS has been operational, some list of birth and death records for persons born between 1904 and 1979 in the PCZ…". *Id.* Despite the alarmist tone, this fairly precisely describes the records sought by Plaintiffs, and a means by which they could be produced.

The rest of the Defendant's sentence – "the Department could not rely on that list as containing accurate data" – is not a basis for exemption. *See Reclaim the Records v. Department of Veterans Affairs*, 18 Civ. 8449 (PAE), 2020 WL 1435220 (S.D.N.Y. Mar. 24, 2020), at *21-22 (rejecting defendant agency's accuracy concerns as a basis for withholding records) ("[T]he FOIA statute does not give an agency license to broadly withhold non-exempt records because the agency has errantly commingled them with exempt records.[…] And a judge-made rule permitting over-withholding in such circumstances … would contravene FOIA's purposes.") If the agency is concerned with the inaccuracies of its data, it may choose to include a disclaimer on the front of its release detailing these concerns. *Petroleum Info. Corp. v. United States Dep't of Interior*, 298 U.S. App. D.C. 125, 976 F.2d 1429, 1437 (1992) ("The Bureau, moreover, does not convincingly explain why its concerns with [the consequences of releasing a report with errors] could not be allayed by conspicuously warning FOIA requesters… that the Bureau disclaims responsibility for any errors or gaps"); *see also Assembly of Cal. v. United States Dep't of Commerce*, 968 F.2d 916, 923 (9th Cir. 1992) ("inaccuracy is not a basis for FOIA exemption").

Defendant's assertion of the limited export capacities of the PIERS database is contradicted by the Privacy Impact Assessment. Rankin Ex. 9. That document, at pages 7-9, lists the offices and systems with whom information in the PIERS system is shared, both within the Bureau of Consular Affairs and externally to the Department of Homeland Security. The types of personal identifiable information data shared by the database are listed at page 2. The document specifies that supervisors and Information System Security Officers "determine individualized access levels depending on job function and level of clearance" (*id.*, p. 9), and lists the multiple access levels of three types of PIERS users at page 14. Thus, Defendant's own document, contradicting an assertion made in their Declaration, suggests that if the data sought by Plaintiffs is contained in

14

PIERS, there is a technical way to conform with the FOIA requirements in producing that data. Defendants should not be permitted to use a limited-access permissions setting as an excuse for withholding its responsive data.

Defendant's objection that such a procedure would also require comparison to "the actual information in the digital record", Dkt. 23, p. 11, is curious. Insofar as the PCZ records have reportedly not been scanned or digitized, Dkt. 22, ¶¶14-15, the existence of a separate "digital record" for verification implies that there may be some other source for the requested records. In any case, no such search was performed here, so the estimate of "years to complete" such an exercise lacks a reasonable basis of calculation.

### v. *Defendant may not decline a search on the basis of its own error.*

It should also be noted that there are <u>two</u> such searches for responsive data that appear to have not been performed: births in the PCZ between 1904 and 1979, and also <u>deaths</u> in the PCZ during the same time period. Defendants incorrectly assert that Plaintiff limited the search query to people born in the PCZ between 1904-1979, Dkt. 22, ¶7, when in fact this limitation was entirely Defendant's error. See note 1, p. 4, *supra*. Even if this error was unintended, it is consequential, and Defendant's error should not justify its refusal to search for the requested materials.

The history of the Panama Canal Zone, and particularly the record of deaths that occurred during the years of American involvement of the construction of the canal, underscore the importance of including death records in this search, especially if criteria such as age at time of death or cause of death are included as search variables. As a hypothetical example, a 21-year old laborer who died in 1911, two years prior to the completion of the canal project, would have been born in 1890 and thus not included in the birth records data. The omission of such a significant trove of data, albeit limited to the indexed names and dates of death in the PIERS database or another relevant source, underscores how a search calculated to discover relevant documents was

not conducted here, and weighs against Defendant's motion and in support of Plaintiff's cross-motion.

**c.  Providing an index utilizing existing data does not require creation of a new record**

As stated, Plaintiff Ferretti's underlying FOIA request did not limit his definition of "index" to any specific form, and he contemplated a document "alphabetically listing" births and deaths in the Panama Canal Zone between 1904 and 1975, "organized by surname or in sequential order." Rankin Ex. 1.  While such a document may or may not exist in printed form correlating to the 68 boxes maintained by Defendant (which Plaintiff contends have not been subjected to a proper search), it may exist among entries in a database maintained by Defendant from which it could be extracted. Extracting the specified data, and providing it in a form requested by the Plaintiff, would not entail the creation of a new document, as Defendant argues, but would be well within the requirements of FOIA as modified by the 1996 Electronic Freedom of Information Act Amendments ("E-FOIA Amendments"), Pub. L. No. 104-231, 110 Stat. 3048 (1996).

The E-FOIA Amendments "make plain that the threshold 'record' requirement for FOIA, as well as that Act's full-disclosure, narrow-exemption philosophy, applies equally in the electronic and the physical contexts." *Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643, 653 (2d Cir. 2023). They further require responding agencies to produce "a responsive 'record in any form or format requested by the person if the record is readily reproducible in that form or format'", *id.*, and "to make 'reasonable efforts to search for the records in electronic form or format'", *id.* Finally, the need to employ "the application of codes or some form of programming to retrieve the information" would "not amount to the creation of records." *Id. See also Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F.Supp.2d 233, 270 (D.D.C. 2012) ("sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record … Sorting a database

16

by a particular data field (*e.g.* date, category, title) is essentially 'the application of codes or some form of programming,' and thus does not involve creating new records"). Accordingly, if the requested data exist in a Department database, the act of searching for them using standard database query functions and formatting the results "in a searchable database format" as specified by Plaintiff Ferretti (Rankin Ex. 1, p. 2), would not entail the creation of a new record.

Defendant frames the request as requiring Department employees to undertake a multistep process of extracting data from the PIERS database, comparing it to an unspecified "digitized record" for verification, and then generating a new document from the verified data that did not previously exist. Dkt. 23, p. 11. That is not what Plaintiff is requesting here. If a search of the 68 boxes of index cards does not produce an already-existing aid which would guide a Department employee to where among those boxes to look for a particular record (i.e., an index), Plaintiff is requesting the relevant Department database be searched for the names and dates of birth of individuals born in the Panama Canal Zone between 1904 and 1979, and the names and dates of death of individuals who died in the Panama Canal Zone between 1904 and 1979, any additional data relevant to the particular individual's vital record (for example, certificate number), and that the data resulting from these searches be provided in a searchable database format.[4]

Defendant puts much emphasis on *Nat'l Sec. Counselors*' distinction between providing particular data points extracted from an agency database, which FOIA requires, and "either creating a record or conducting research" from an agency database, which "would not necessarily have existed prior to a given FOIA request". *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F.Supp.2d 233, 271 (D.D.C. 2012). The example in that case of when a "listing or index of

---

[4] Plaintiff respectfully emphasizes again that their Request does <u>not</u> seek copies of the underlying birth certificates or death certificates, but only of the minimal information used internally to locate those certificates within the materials maintained by the Department. Any argument about FOIA exemptions or concerns about personal privacy – none of which have been asserted here by Defendant – accordingly falls flat, due to the specific nature of the Request.

records" would constitute a new record (elided from Defendant's brief) was "a request seeking 'a database listing of the first 100 FOIA requests filed in Fiscal Year 2012'", which was not the kind of data that agency would be expected to retain. *Nat'l Sec. Counselors* states the rule plainly:

> "a FOIA request for a listing or index of a database's contents *that does not seek the contents of the database*, but instead essentially seeks *information about those contents*, is a request that requires the creation of a new record, insofar as the agency has not previously created and retain such a listing or index."

*Id.* (emphasis added.) Plaintiff's Request for material which has already "been digitized in a searchable database format", Rankin Ex. 1, p. 1, solidly falls into the category of "the contents of the database".

Plaintiffs' request does not require the Department to "reprogram a database" as in *Hawkinson v. Executive Office for Immigration Review,* No. 21-11817-MPK, 2023 WL 515768 (D. Mass. Aug 10, 2023), cited by Defendant. In that case, the plaintiff sought copies of Board of Immigration Appeals decisions stored as image-only files that contained the text phrases "alternatives to detention" or "alternatives-to-detention". The process of converting the 3.4 million image files involved to searchable text files – i.e., *indexing* the text – would have entailed installing new text-recognition software on a dedicated drive, and using it to create new documents for each of those files that did not previously exist, which that court correctly found was not a requirement of FOIA. Here, the data seem to already exist as data, and only require an agency employee with the proper permissions to search in a way calculated to find and copy those data records.

Nor does the Request approach the overbreadth and lack of specificity of the subject FOIA request in *Landmark Legal Foundation v. Department of Justice*, 211 F.Supp.3d 311 (D.D.C. 2016), which would have required surveying agency employees as to their use of private-sector, non-governmental email and electronic messaging tools, and other extensive investigative work far outside the reach of FOIA.

18

Nor does this request ask the Department to look for documents outside the Department's control, as in *People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6 (D.D.C. 2006), where the Court discusses defendant DOJ's counterfactual argument that while it enjoyed access to the PACER database, PACER was not the DOJ's own database and requiring the DOJ to produce a list of PACER search results would constitute production of non-agency records. *Id*. at 14-15. Plaintiff's Request here for an export of existing DOS data in a searchable database format is, to the contrary, well within the contours of what FOIA and the E-FOIA amendments require, and should not be withheld from production.

## V. Conclusion

Defendant's motion for summary judgment should be denied. Defendant has failed to meet its threshold burden of resolving any ambiguities or factual uncertainties. Questions persist about how the Department locates relevant records without an index, as well as what information in the Department's digital database correlates to the substance of the Plaintiffs' Request. Questions about the technical capacity of the PIERS database to export records responsive to Plaintiffs' Request are unresolved, and a Department-authored document appears to contradict assertions about that database made in Defendant's Declaration. Defendant has not demonstrated that any search was conducted in response to Plaintiffs' Request, and certainly not one calculated to locate responsive records. For these reasons, Defendant's motion should be denied and Plaintiffs' cross-motion granted.

Dated:        February 19, 2024
              New York, New York

                            Respectfully submitted,

                            BELDOCK LEVINE & HOFFMAN, LLP
                            99 Park Avenue, PH/26th Floor
                            New York, New York 10016
                            *Attorneys for Plaintiff*

                            By: _____
                            Benjamin Meyers, Of Counsel
                            t: 646-496-2353
                            e: ben.meyers.esq@proton.me

                            David B. Rankin
                            t: 212-277-5825
                            e: drankin@blhny.com