UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS and ALEC FERRETTI,

Plaintiffs,

-v-

UNITED STATES DEPARTMENT OF STATE,

Defendant.

23 Civ. 1471 (JMF)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2785
Email: joseph.pantoja@usdoj.gov

JOSEPH A. PANTOJA
Assistant United States Attorney, *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................. **ERROR! BOOKMARK NOT DEFINED.**

ARGUMENT ......................................................................................................................2

   I.  PLAINTIFFS' ARGUMENTS FAIL TO UNDERMINE THE ADEQUACY OF
THE DEPARTMENT'S SEARCH FOR RECORDS ...........................................................2

      A.    The Department's Search Was Reasonable and Adequate .....................................2

      B.    Plaintiffs' Speculation Concerning the Existence of Other Records Should
Be Rejected ..........................................................................................................7

   II.  THE DEPARTMENT CANNOT RESPOND TO THE FOIA REQUEST
WITHOUT CREATING NEW, CUSTOMIZED AGENCY RECORDS, WHICH
FOIA DOES NOT REQUIRE ...........................................................................................10

CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement,*
  58 F.4th 643 (2d Cir. 2023) ....................................................................... 13, 14
*Carney v. DOJ,*
  19 F.3d 807 (2d Cir. 1994)............................................................................ 2
*Forsham v. Harris,*
  445 U.S. 169 (1980)...................................................................................... 15
*Grand Cent. P'ship, Inc. v. Cuomo,*
  166 F.3d 473 (2d Cir. 1999)......................................................................... 8
*Hall v. Central Intelligence Agency,*
  538 F.Supp.2d 64 (D.D.C. 2008) ................................................................ 9
*Hawkinson v. Executive Office for Immigration Review,*
  No. 21-11817-MPK, 2023 WL 5153768 (D. Mass. Aug. 10, 2023) .................. 17
*In't Veld v. Dep't of Homeland Sec.,*
  589 F. Supp. 2d 16 (D.D.C. 2008)............................................................... 9, 11
*Judicial Watch v. Dep't of Commerce,*
  337 F. Supp. 2d 146 (D.D.C. 2004) ............................................................ 9
*Landmark Legal Foundation v. Department of Justice,*
  211 F. Supp.3d 311 (D.D.C. 2016) .............................................................. 17
*Long v. ICE,*
  149 F. Supp. 3d 39 (D.D.C. 2015) .............................................................. 9, 11
*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975)...................................................................................... 10
*Nat'l Sec. Counselors v. Cent. Intelligence Agency,*
  898 F. Supp. 2d 233 (D.D.C. 2012) ............................................................ 14, 15, 16
*People for the Am. Way Found. v. U.S. Dep't of Justice,*
  451 F. Supp.2d 6 (D.D.C. 2006)................................................................... 17
*Physicians for Human Rights v. DOD,*
  675 F. Supp. 2d 149 (D.D.C. 2009) ............................................................ 8
*Reyes v. United States Environmental Protection Agency,*
  991 F. Supp. 2d 20 (D.D.C. June 13, 2014)................................................. 8
*Whitaker v. Dep't of Commerce,*
  970 F.3d 200 (2d Cir. 2020)......................................................................... 3, 7, 10

Statutes

5 U.S.C. § 552(a)(4)(B) .................................................................................. 8
Pub. L. No. 104–231 ...................................................................................... 13

## PRELIMINARY STATEMENT

Defendant United States Department of State (the "Department"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion for summary judgment, and in opposition to plaintiffs Reclaim the Records's and Alec Ferretti's (collectively, "Plaintiffs'") cross-motion for summary judgment.

Plaintiffs commenced this action under the FOIA to compel the Department to produce "a copy of the **index** to all birth and death records held by the State Department for the Panama Canal Zone [("PCZ")]." ECF No. 1-1 at 1 (emphasis in original); *see also* Compl. ¶ 9; Plaintiffs' Amended Memorandum of Law ("Pl. Mem."), ECF No. 42, at 1 ("This action solely seeks the production of the *agency-created* basic *index or internal 'finding aid'* to these birth and death records, whether those indexes exist on physical index cards or in a modern textual database or both . . . ." (emphasis added)); ECF No. 1-8, at 1, 13-14 (Plaintiffs' clarification that they are seeking the "index" to such records for persons born between 1904 and 1979 in the PCZ *as referenced* in pages 11 and 12 of the attached Department records schedule (emphasis added)).

The Department submitted the declaration of Regina L. Ballard ("Ballard Decl."), Division Chief for Office of Records Management, Records Review and Release Division within Passport Services, Bureau of Consular Affairs of the Department, explaining that the Department has never maintained such an index and no responsive records were found. ECF No. 22. Nevertheless, Plaintiffs contend that the Department has not adequately explained its search process or otherwise performed an adequate search, Pl. Mem. at 9-13. Contrary to Plaintiffs' contention, and despite the Department never having maintained an index of the type sought by the FOIA request here, the Department conducted a search of its files that were reasonably likely

to uncover responsive records and found none, and provided more than enough detail concerning

its search processes in the Ballard Declaration. Plaintiffs' speculation that more documents could

perhaps have been found is ungrounded in any factual basis and does not undermine the

adequacy of the search or the presumption of good faith accorded to agency declarations.  The

Department is therefore entitled to summary judgment on the adequacy of its search.

Relying on the declaration of Ron Schnell ("Schnell Decl."), Plaintffs also argue that the

Department could make certain database queries of the information already in PIERS to generate

an index or list of the kind sought in their FOIA request. Pl. Mem. at 16-20. However,

consideration of that declaration is inappropriate here for several reasons, including that the

adequacy of a federal agency's search for documents in response to a FOIA request is not a topic

on which the Court needs the assistance of an expert, and Plaintiffs' attempt to discredit the

Department's FOIA search with its own declaration is insufficient to overcome the personal

knowledge-based declarations submitted by the Department. In any event, FOIA does not

compel the Department to create a new record. Even if it were possible to do so, which it is not,

using database queries to create a new, custom record akin to an index or finding aid for the

Department's birth and death records for PCZ—*i.e.*, a new record that is not otherwise

maintained by the Department—is not what FOIA requires.

## ARGUMENT

## I.     PLAINTIFFS' ARGUMENTS FAIL TO UNDERMINE THE ADEQUACY OF THE DEPARTMENT'S SEARCH FOR RECORDS

### A.     The Department's Search Was Reasonable and Adequate

A court may award summary judgment if the affidavits provided by the agency are

"adequate on their face." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). The adequacy of an

agency's search is "measured by the reasonableness of the effort in light of the specific request."

*Whitaker v. Dep't of Commerce*, 970 F.3d 200, 206 (2d Cir. 2020). "We see no reason to depart from the sensible and persuasive approach employed by the courts that have considered this question, and we therefore conclude that an agency need not conduct a search that it has reasonably determined would be futile." *Id*. at 207.

As a preliminary matter, in contending that the overall breadth of the Department's search was inadequate, Plaintiffs misconstrue Ms. Ballard's original declaration as indicating that the Department had limited its search for responsive records to exclude an index for "births in the PCZ between 1904 and 1979, and also deaths in the PCZ during the same time period." Pl. Mem. at 15-16. As explained by Ms. Ballard, although Plaintiffs clarified at the administrative level that they are seeking the "index" to such records for persons born between 1904 and 1979 in the PCZ as referenced in a Department records disposition schedule, "the Department nonetheless searched for any index or list that could serve as a search aid for PCZ birth and/or death records without restriction as to the date of such records." Reply Declaration of Regina L. Ballard, dated June 12, 2024 ("Ballard Reply Decl.") ¶ 7; *see also* Ballard Decl. ¶ 28 ("The Department considered how it maintains birth and death records for the PCZ and confirmed that no 'index' or list of such records exists."). As explained below, the Department performed an adequate search.

Plaintiffs' mistaken belief in the existence of an "agency-created basic index or internal 'finding aid' to these birth and death records," Pl. Mem. at 1, apparently stems from the word "index" used in certain entries of the Department's records disposition schedule and in a System of Records Notice ("SORN"). *See* ECF No. 1-8, at 1; Ballard Decl. ¶ 14 & Exh. 3. Plaintiffs also speculate that an index or search aid for PCZ birth and PCZ death records must already exist because "[t]he ability to locate a single record amond 95,260 cards strongly suggests the

availability of an index," and that "an index in some form would rationally be required for efficient management of the records." Pl. Mem. at 9-10; *see id.* at 11 n.3 (absence of an index "strikes Plaintiff as exceedingly improbable"). However, as Ms. Ballard explained, the term "index" as used in the referenced records disposition schedules and SORN refers to either "the entirety of the collection of the index cards . . . , not to a separate list or index of these records, in whole or in part," or to a "digital version of the referenced records and not to an index or list of such records," respectively, and that "there is no 'index' of PCZ birth and/or death records." Ballard Decl. ¶¶ 18, 24; *id.* ¶¶ 13-17 (discussing Department's records disposition schedules relied on by Plaintiffs). Ms. Ballard further explained why the Department's ability to share PIERS data externally within the Executive Branch does not signify or require the existence of an index or list in PIERS for PCZ records. *Id.* ¶ 31 ("This indirect sharing of data allows DHS to obtain the same data that is in PIERS through an indirect application that does not include any sort of index or table of the data included in the extraction.").

Similarly, Plaintiffs' speculation that "an index of some type would seem necessary to correlate the index cards to the corresponding records in digital form which are apparently part of the database" is simply wrong. Pl. Mem. at 12-13. Plaintiffs' incredulity aside, Ms. Ballard confirmed that Department employees *can* search for PCZ birth and PCZ death records using a recordholder's personal identifiable information ("PII"), such as name, date of birth, *etc*., as follows: by initially using PIERS to identify a PCZ birth or PCZ death record (which consists of an image of the actual physical copies of the birth and death records for the PCZ), and then ensuring that the information in PIERS matches the information in the actual record(s) for the individual in question by (1) by looking through "book volumes" of PCZ birth and PCZ death records; or (2) by manually searching for the individual index cards constituting the official PCZ

birth or PCZ death records. Ballard Decl. ¶¶ 19, 23; Ballard Reply Decl. ¶¶ 15-29. Indeed, "there are no database data tables on which Department employees rely when searching for a PCZ birth or death record." Ballard Reply Decl. ¶ 30; *see also id.* ¶ 32 ("[R]egardless of whether a Department employee is looking for a PCZ birth or PCZ death record in PIERS, in the book volumes, or among the index cards, the Department employee can locate a specific record without using an index or list, so long as the employee has personal identifying information for PIERS and the recordholder's name and either the date of birth or date of death, respectively, for the PCZ birth and death records residing in book volumes and index cards. At no such point does the Department employee use an 'index,' list, or other finding aid to identify or otherwise locate a PCZ birth record or PCZ death record, and no such index, list or finding aid exists.").

Ms. Ballard also confirmed that no "index" for PCZ birth or PCZ death records was ever maintained by the Department. Ballard Decl. ¶¶ 8, 13-18, 23-25, 27-28. She explained that she is familiar "with how the Department maintains PCZ birth and death records and would have known of the existence of any index or list of these records." Ballard Reply Decl. ¶ 11. According to Ms. Ballard, while "a system user" could "input an individual's personal identifiable information, such as a name, date of birth, *etc*., to retrieve information on a person-by-person basis from PIERS," Ballard Decl. ¶ 23, the "Department relies on the paper index cards as its official birth and death records for the PCZ, and there is no accompanying index—in paper or electronic form—of those records," *id*. ¶ 27; *see also* Ballard Reply Decl. ¶ 29. Accordingly, the Department "does not maintain an 'index' in PIERS that Department staff can pull, print or otherwise generate that is responsive to [the] FOIA request," Ballard Decl. ¶ 25, *see also id*. ¶ 23; Ballard Reply Decl. ¶¶ 19-20. Ms. Ballard also confirmed that "that is not a functionality available to the Department through PIERS at this time, nor has such functionality

ever been available to the Department through PIERS," Ballard  ¶ 23; *see also* Ballard Reply

Decl. ¶ 20; and that "[n]o document exists, in paper form or electronic form that could be

extracted from Department systems or databases, alphabetically listing births and deaths in the

PCZ," Ballard Reply Decl. ¶ 31. In sum, due to the incompleteness of PIERS records, the

Department relies on the paper index cards as its official birth and death records for the PCZ, and

there is no accompanying index—in paper or electronic form—of those records. Ballard Decl.

¶¶ 21-22, 26-27.

The Department also submitted the Declaration of Sharon Westmark ("Westmark

Decl."), Division Chief of the Production Services Design and Development Division within

Consular Systems and Technology, Bureau of Consular Affairs. Ms. Westmark confirmed, based

on her personal knowledge and experience with PIERS, that system users can retrieve images of

PCZ birth and PCZ death records by entering a recordholder's PII in PIERS without resort to an

index of such records. Westmark Decl. ¶¶ 6, 9. She also reiterated that, for the reasons noted by

Ms. Ballard, PIERS does not contain a list or index of PCZ records, nor does PIERS contain all

the PCZ records, and whatever PCZ records it does contain are of poor quality. *Id.* ¶ 11; Ballard

Decl. ¶ 21. Accordingly, an inventory of PCZ records would therefore need to be derived from

the paper index cards for PCZ records. Westmark Decl. ¶ 14; Ballard Reply Decl. ¶¶ 27-29.

Beyond PIERS, Ms. Ballard conducted a search for any such index or list, "including by

speaking with Department personnel in the Office of Consular Systems and Technology, to

determine whether any existing index or list could be extracted from Department systems or

databases." *Id.* ¶ 12. She also "spoke with other Department personnel with subject matter

expertise, including Passport Services, Office of Modernization and Systems Liaison, to

determine whether an otherwise unknown list or index may exist for PCZ records." *Id.* ¶ 13.

These Department personnel "confirmed that the Department does not maintain any index or list of PCZ birth or death records and are otherwise unaware of the existence of any such index or list." *Id*.; Westmark Decl. ¶ 7 ("There is no feature in PIERS that allows a user to pull an 'index' of all the PCZ records stored in PIERS."); *id*. ¶ 10 ("Because of [the way PIERS stores PCZ records], the only way for the Department to compile an "index" of the PCZ birth records and PCZ death records in PIERS would be for a Department employee to attempt to identify an accurate means of referencing and joining data stored across multiple repositories, which would require manual searches and verification of every record."). Ms. Ballard further confirmed that, aside from PIERS, "[t]here is no other electronic recordkeeping system on which a search for the requested index or list, *e.g.,* for 'PCZ index' or 'PCZ list,' might reasonably result in discovery of the requested index or list." Ballard Reply Decl. ¶ 20. Having confirmed that PIERS does not contain an index or list of PCZ birth or PCZ death records and that there is no other location that might reasonably result in discovery of the requested records, particularly because the Department does not maintain such records, the Department satisfied its obligation to perform an adequate search here.

### B. Plaintiffs' Speculation Concerning the Existence of Responsive Records Should Be Rejected

Ultimately, Plaintiffs' speculation that the requested index exists is not sufficient to overcome the Department's declarations, which are entitled to a presumption of good faith and which reasonably explained the search that was performed and that, in any event, any further search would be futile because the Department does not maintain—and has never maintained— the records sought. *See* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment ("Def. Mem."), ECF No. 23, at 7-9 (listing cases); *cf. Whitaker*, 970 F.3d at 207 ("'It is clear beyond cavil that an agency cannot improperly withhold records that it does not

maintain, and that 'where the Government's declarations establish that a search would be futile,

the reasonable search required by FOIA may be no search at all.'" (alterations omitted) (*quoting*

*Reyes v. United States Environmental Protection Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. June

13, 2014))); *see Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (Agency

affidavits are "accorded a presumption of good faith," which "cannot be rebutted by purely

speculative claims about the existence and discoverability of other documents.") (internal

quotation marks and citations omitted); *id.* at 478 (Those affidavits need only "contain

*reasonable specificity* of detail rather than merely conclusory statements." (emphasis in

original)). "[I]n responding to a FOIA request, an agency is only held to a standard of

reasonableness; as long as this standard is met, a court need not quibble over every perceived

inadequacy in an agency's response, however slight." *Physicians for Human Rights v. DOD*, 675

F. Supp. 2d 149, 164 (D.D.C. 2009).

Plaintiffs' challenge to the overall breadth of the Department's search on the ground that

they suspect a digital or electronic version of the sought-after index exists in PIERS, which

allegedly had not been adequately searched, is also unavailing. Pl. Mem. at 16-20. In making this

argument, Plaintiffs rely on the declaration of Mr. Schnell, Plaintiffs' proffered "database

expert." ECF No. 41. Although Mr. Schnell's Declaration raises some questions about PIERS'

capabilities based on his experience with other, "typical" databases, those questions are

insufficient to create a genuine dispute of material fact that would preclude a grant of summary

judgment in the Department's favor. FOIA requires courts to "accord substantial weight to an

affidavit of an agency concerning the agency's determination as to technical feasibility . . . and

reproducibility[.]" 5 U.S.C. § 552(a)(4)(B). Accordingly, where, as here, the agency has

provided reasonably detailed declarations addressing the issue, the adequacy of a federal

agency's search for documents in response to a FOIA request is not a topic on which this Court needs the assistance of an expert. *See Hall v. Central Intelligence Agency*, 538 F.Supp.2d 64, 72–73 (D.D.C. 2008) ("[T]he Federal Rules of Evidence and Federal Rules of Civil Procedure do not permit testimony to be introduced carte blanche merely because they are offered by an expert.").

Further, Mr. Schnell is not a Department employee, and he does not aver that he has ever worked at the Department. *See* Schnell Decl. ¶¶ 2-8. Nor does he attest to any personal knowledge of or familiarity with the record systems maintained by the Department; rather, he assumes—mistakenly, as discussed *infra*—that the Department's database is a "typical" one. *See generally* Schnell Decl. Mr. Schnell therefore lacks a foundational knowledge of the events underlying the Department's search of its uniquely-configured PIERS database, and his testimony has no probative value as to the adequacy of the agency's search. *See Long v. ICE*, 149 F. Supp. 3d 39, 57-58 (D.D.C. 2015) (noting that plaintiff's expert, "limited by his lack of first-hand experience," could not rebut the agency's declaration); *In't Veld v. Dep't of Homeland Sec.*, 589 F. Supp. 2d 16, 17-21 (D.D.C. 2008) ("DHS released 28 pages of records to her, but she contests the adequacy of the search in reliance on an affidavit of a travel expert. Because the expert's affidavit is based on the erroneous assumption that DHS's data systems are the same as the airlines' data systems and because DHS submitted detailed affidavits describing an adequate search, summary judgment will be granted in favor of DHS."); *Hall*, 538 F. Supp. 2d at 72 ("More fundamentally, the Declaration is at most an opinion that defendant did not conduct an adequate search. [Declarant] cannot speak to the truth of the events he alleges to have occurred, to which he has no personal knowledge."); *see also Judicial Watch v. Dep't of Commerce*, 337 F. Supp. 2d 146, 161 (D.D.C. 2004) (finding that plaintiff's attempt to discredit FOIA search with

its own declaration was "insufficient to overcome the personal knowledge-based" declarations submitted by the agency).

For the foregoing reasons and as also explained in the Department's moving brief, Plaintiffs' unsubstantiated speculation that an index of finding aid for PCZ birth and PCZ death records was necessary for the Department to search such records and that consequently a more thorough search might have located a responsive record is insufficient to overcome the Department's affidavits, "which adequately explain why defendant would not have records responsive to th[e] request[]." *Whitaker*, 970 F.3d at 208.

## II.    THE DEPARTMENT CANNOT RESPOND TO THE FOIA REQUEST WITHOUT CREATING NEW, CUSTOMIZED AGENCY RECORDS, WHICH FOIA DOES NOT REQUIRE

Despite their actual FOIA request seeking a copy of what Plaintiffs apparently believed was an existing index, Plaintiffs now argue that the Department is also obligated to generate an index of PCZ birth and PCZ death records via database queries in PIERS. Pl. Mem. at 14 (arguing that Plaintiffs seek some list of PCZ birth and PCZ death records for persons born between 1904 and 1979 that "an IT specialist could manipulate PIERS to extract"); *id.* at 14-20. In making this argument, Plaintiffs again rely on the declaration or Mr. Schnell, who states that he has experience in database programming. Pl. Mem. at 13-15; ECF No. 41. As a preliminary matter, the Department cannot be compelled to create a new document or record, or new functionalities in PIERS, in response to the FOIA Request. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975); *see* Def. Mem. at 9-14 (discussing cases). Moreover, the relevant portion of Mr. Schell's declaration—addressing what Mr. Schnell believes the Department could do to create a list of the PCZ birth and PCZ death records from whatever records are accessible from PIERS—is inadequate to rebut the Department's

declarations regarding the information that is available through PIERS, due to Mr. Schnell's lack of first-hand experience with the Department's databases. *See, e.g.*, *Long*, 149 F. Supp. 3d at 57-58; *In't Veld*, 589 F. Supp. 2d at 17-21.

Indeed, as a result of Mr. Schnell's reliance on how "typical" databases work, he mischaracterizes the capabilities of the PIERS database. The Department has provided straightforward, factual information about what actually exists and does not exist at the Department—in PIERS or otherwise—with regard to PCZ birth and PCZ death records. Ms. Westmark elaborated on the technical aspects of the PIERS database as they relate to the FOIA request. Like Ms. Ballard, Ms. Westmark confirmed that "[t]here is no feature in PIERS that allows a user to pull an 'index' of all the PCZ records stored in PIERS." *Id*. ¶ 7; Ballard Decl. ¶¶ 13-18, 24-29; Ballard Reply Decl. ¶¶ 8-10, 20, 30-31. Relying on Mr. Schnell's description of examples of queries that could be used to extract information from what he described as typical databases, Plaintiffs contend that "it would take a matter of hours to construct and test the query, then to run it without risk to the data, and finally to export the resulting data to a file responsive to the Request." Pl. Mem. at 13 (citing Schnell Decl. ¶¶ 17-18, 24, 28). Mr. Schnell opined that even if the Department does not use any existing electronic index to retrieve the PCZ birth and PCZ death records in PIERS and even if "PIERS as configured for the specific needs of Department staff is limited to entering individual information, the fact . . . that PIERS can use [PII] shows that, without question, the database maintains these fields, and that these fields can be used in a simple query such as the examples above." Schnell Decl. ¶ 27.

But the Department has explained through its declarants why Mr. Schnell is incorrect. Unlike Mr. Schnell, who offered a generalized opinion regarding the capabilities of typical databases, Ms. Westmark is familiar with the PIERS database itself. Even assuming Mr. Schnell

had correctly explained how queries can be created to extract data in a typical database "so long as the data is stored in database columns and fields," he "incorrectly assumes that this is how data is stored in PIERS." Westmark Decl. ¶ 8. Ms. Westmark explained that, unlike in a typical database, "[t]he data in PIERS is stored as 'images' because the Department scanned and imported the actual physical copies of the birth and death records for the PCZ," and "[e]ach saved image of a PCZ birth or death record has a unique image identification number, which PIERS uses to retrieve the appropriate birth or death record to display to the user." *Id*. ¶ 9. Consequently, "the only way for the Department to compile an 'index' of the PCZ birth records and PCZ death records in PIERS (which does not currently exist) would be for a Department employee to attempt to identify an accurate means of referencing and joining data stored across multiple repositories, which would require manual searches and verification of every record." *Id*. ¶ 10.[1]

> As further explained by Ms. Westmark,
>
> In order to search for a PCZ record in PIERS, the system user must enter a person's Surname, Given Name, DOB and file type (*e.g*.: "PCZ" (Panama Canal Zone), "ROD" (report of death)).  The PIERS application references two databases when a front-end user enters this information to retrieve PCZ and ROD data. As explained in Ms. Ballard's declaration, these tables do not contain all of the PCZ and ROD data as the effort to import this data was abandoned many years ago due to the poor quality of the resulting records. *See* Ballard Decl. ¶ 21.
>
> The name is associated with a unique data ID called a "PRISM file number" in the backend, which is how the respective image is referenced and returned in PIERS.  More specifically, the PIERS application is the front end to a series of databases, with the following data distributed across them: citizens' name, social security number, date of birth, place of birth, address, e-mail address, phone number, and PRISM file number.  When a system user searches by name in PIERS, the application searches for all relevant PRISM file numbers based upon the file type entered.  PIERS uses the file type identifier to join/capture the

---

[1] "In addition to the hours that Passport officers would need to spend verifying the information, this process would require at least four technical subject matter experts and at least 100 hours devoted to researching, reviewing, and validating data." Westmark Decl. ¶ 10.

relevant unique PRISM file numbers responsive to the search.  When the PIERS user attempts to retrieve the document, the PIERS application code on the backend searches the relevant file shares/databases to retrieve the image of the PCZ birth or death record.

There is a unique PRISM number for each scanned document, so there could be multiple PRISM numbers associated with a recordholder, who could have a PCZ record in addition to any number of passport records.  Due to the incompleteness of the digital data, the Department is unable to validate the accuracy of all the PRISM file numbers associated with the PCZ.  A Passport Specialist would need to validate any data from PRISM file numbers. Consequently, as explained by Ms. Ballard, the Department does not rely on PIERS as a database of verified passport records, and especially of records for the PCZ.  Ballard Decl. ¶ 22.  Instead, as also noted by Ms. Ballard, the Department relies on the paper index cards as its official birth and death records for the PCZ, and there is no accompanying index—in paper or electronic form—of those records. Ballard Decl. ¶ 27.

Westmark Decl. ¶¶ 11-13. "Because PIERS utilizes a series of databases housing different aspects of this information, the 'database queries' described in the Schnell declaration would generate unreliable data that Department personnel would have to separately validate." *Id*. ¶ 14. Because such unreliable data—stemming from a failed attempt to import PCZ data into PIERS that was abandoned years ago—could never serve as an index or finding aid for PCZ records, "an inventory of the Department's PCZ records would need to be derived from the paper index cards described in Ms. Ballard's declaration." *Id*., Ballard Reply Decl. ¶ 27; Ballard Decl. ¶ 21 ("the data entry of the records was of such poor quality that the Department abandoned the effort and decided to preserve them in their paper form instead") and ¶ 22. In short, there is no existing electronic index of PCZ birth or PCZ death records that is utilized by PIERS before it retrieves the images corresponding to a system user's request for records, and performing database queries on PIERS is not straightforward as Mr. Schnell suggests, nor could it result in an index or finding aid for PCZ records.

Plaintiffs argue that the 1996 Electronic FOIA Amendments ("E-FOIA Amendments"), Pub. L. No. 104–231, § 5, 110 Stat. 3048, 3050 (1996), compel the extraction of an index from

PIERS, such as "a document 'alphabetically listing' births and deaths in the Panama Canal Zone between 1904 and 1975, 'organized by surname or in sequential order,'" because the E-FOIA Amendments require an agency to conduct electronic database searches, and such searches are not regarded as involving the creation of new records.  Pl. Mem. at 16–20 (citing *Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643, 653 (2d Cir. 2023); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012)).  But this argument attacks a strawman.  The Department's position is not that lists identifying individuals who were born in the PCZ between 1904 and 1979, and identifying individuals who died in the PCZ between 1904 and 1979, in the PIERS database are immune from production under FOIA because they are stored in an electronic database or can only be retrieved by an electronic search of that database, but rather that the process of responding to Plaintiffs' FOIA Request entails the creation of records that presently do not exist.

Plaintiffs' reliance on *ACLU Immigrants' Rights Project v. U.S. Immigration & Customs Enforcement*, 58 F.4th 643, 653 (2d Cir. 2023) (the need to employ "the application of codes or some form of programming to retrieve the information" would "not amount to the creation of records"), is misplaced. Pl. Mem. at 17. The Department discussed that case in its moving brief, explaining why *ACLU* is distinguishable and otherwise supports the conclusion that requiring the Department to generate an index under the circumstances of this case would amount to record creation that is not required under FOIA. Def. Mem. at 13-14. Here, unlike the agency in *ACLU*, the Department produced no responsive records because they in fact do not exist, not because the Department had failed "to preserve a function necessary to afford the public the same person-centric access to non-exempt records that [the agency] already has." 58 F.4th at 656. The

Department is *not* denying Plaintiffs access to non-exempt records already maintained in the agency's database and in a form that is as useful as the form in which the non-exempt records are available to the agency in the regular course of business. That is because the requested index or inventory is not already maintained in the Department's database and otherwise does not currently exist for use by anyone, including the agency, in paper or electronic form, *see* Ballard Decl. ¶¶ 10-31; Ballard Reply Decl. ¶¶ 10-13, 20, 29-32; Westmark Decl. ¶¶ 7-15, and the FOIA does not obligate the Department to create such an index, *see, e.g., Forsham v. Harris*, 445 U.S. 169, 186 (1980).

In the *National Security Counselors* case, cited in both the Department's moving brief and in Plaintiffs' brief, *see* Def. Mem. at 12; Pl. Mem. at 17, the district court considered an analogous FOIA request and held that it amounted to the creation of a new record:

> Producing a listing or index of records . . . is different than producing particular points of data (*i.e.,* the records themselves).  This is because a particular listing or index of the contents of a database would not necessarily have existed prior to a given FOIA request . . . .The same would be true of paper, rather than electronic, records.  For example, if a FOIA request sought 'an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis,' an agency need not create an inventory if one did not already exist, though the agency would need to release any such non-electronic records themselves if they were requested and were not exempt from disclosure.

898 F. Supp. 2d at 271. As discussed in the Department's moving brief, by seeking an "index" or list of the names and dates of birth of individuals born in the PCZ between 1904 and 1979, and the names and dates of death of individuals who died in the PCZ between 1904 and 1979, Plaintiffs are essentially requesting an inventory of PCZ birth and PCZ death records. Def. Mem. at 12. The Department "need not create an inventory if one did not already exist," and "[t]herefore, a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a

request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d at 271; *see also* Def. Mem. at 12-13 (listing cases).

Plaintiffs attempt to distinguish *National Security Counselors* by arguing that it involved "a request seeking 'a database listing of the first 100 FOIA requests filed in Fiscal Year 2012,' which was not the kind of data that agency would be expected to retain." Pl. Mem. at 19. But as Ms. Ballard and Ms. Westmark make clear, the Department does not maintain, and has never maintained, a paper or digital listing of PCZ birth or PCZ death records, regardless of the time frame of such records. *National Security Counselors* is thus on point. Consequently, even assuming, as Plaintiffs contend, that their FOIA request seeks material which has already been digitized in a searchable database form" and would "fall[] into the category of 'the contents of the database'" and thus not the creation of a new record, Pl. Mem. at 19, the Department's declarations adequately explain why such a record does not exist.

Plaintiffs' selective quoting of *National Security. Counselors* to suggest that they are merely asking the Department to perform a search required by FOIA is unavailing. Pl. Mem. at 17. The pertinent language of that decision is as follows:

> [A]n agency need not create a new database or a reorganize its method of archiving data, but if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record. Likewise, sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record because, as Congress noted in the legislative history to the E-FOIA Amendments, "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." Sorting a database by a particular data field (*e.g.*, date, category, title) is essentially "the application of codes or some form of programming," and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests.

898 F. Supp. 2d at 270. This language does not help Plaintiffs because, admittedly, Plaintiffs are not seeking the underlying records themselves, which might have "require[d] the application of codes or some form of programming to retrieve the information." *Id*.  Plaintiffs are instead asking the Department to conduct a search for the very purpose of generating a list or inventory that does not currently exist.

Plaintiffs' attempt to distinguish *Hawkinson v. Executive Office for Immigration Review*, No. 21-11817-MPK, 2023 WL 5153768 (D. Mass. Aug. 10, 2023); *Landmark Legal Foundation v. Department of Justice*, 211 F. Supp.3d 311 (D.D.C. 2016), and *People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp.2d 6, 15 (D.D.C. 2006), is also unavailing. Pl. Mem. at 19-20. The Department cited those cases to demonstrate that Courts have repeatedly found that agencies are excused from creating files or database indices for FOIA requesters and are otherwise not required to create a record in response to a FOIA request, which is essentially what Plaintiffs are asking for here. *Hawkinson*, 2023 WL 5153768, at *8; *Landmark Legal Foundation*,  211 F. Supp.3d at 318; *People for the Am. Way Found.*, 451 F. Supp. 2d at 15; Def. Mem. at 11-12.

## CONCLUSION

For the foregoing reasons, defendant Department respectfully requests that the Court grant summary judgment in its favor and deny Plaintiff's cross-motion for summary judgment, as set out above, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: June 12, 2024
        New York, New York

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for Defendant*

                                By:     */s/ Joseph A. Pantoja*
                                        JOSEPH A. PANTOJA
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.:   (212) 637-2785
                                        Email: joseph.pantoja@usdoj.gov