UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECLAIM THE RECORDS and ALEC FERRETTI,

                        Plaintiffs,

- against -

UNITED STATES DEPARTMENT OF STATE,

                        Defendant.

23 Civ. 1471 (JMF)

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

August 2, 2024

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs*

Plaintiffs Reclaim the Records and Alec Ferretti, by counsel, respectfully submit this reply memorandum of law in further support of its cross-motion for summary judgment.

## I. Preliminary Statement

Defendant's Reply Memorandum of Law ("Def. Rep.", Dkt. 45) and supporting declarations fail to justify Defendant's refusal to conduct a meaningful search in response to Plaintiffs' FOIA request. Defendant relies on a misapprehension of what Plaintiffs seek, which is an extract from Department of State database records that, at minimum, would provide Plaintiffs with the names of individuals for whom the Department maintains records relating to their having been born or having died in the Panama Canal Zone ("PCZ") between the years 1904 and 1979.

Defendant acknowledges that a searchable database of these records exists, but rather than simply produce this extract of names and dates through a database search query, Defendant treats the request as asking for a pre-existing independent document comprising such a list, already compiled from Department sources, which Defendant asserts does not exist. Defendant offers no statutory exemptions to producing the requested data, but relies on self-imposed restrictions in the operation of the database to argue that producing the data would be burdensome and require creation of a new record. Defendant cannot rely on obstacles of its own devising to withhold production of responsive data it maintains. Plaintiffs' cross-motion for summary judgment should be granted on the basis of Defendant's failure to conduct this search, and Defendant should be ordered to produce the requested records.

## II. Argument

a. **No meaningful search of Defendant's database was conducted.**

Plaintiff Ferretti requested an index of the names contained in the birth and death records held by the State Department for the Panama Canal Zone, to be provided digitally in a searchable

1

database format. *See* Pl. Exh. 1, Dkt. 36. Plaintiff contemplated that these names were part of a larger database maintained by the Department, from which the Department could isolate and compile a list of the requested names through standard database queries and commands. This limited information about the subjects of the PCZ birth and death records, extracted from the Department's database, is the "index" Plaintiff anticipated receiving. *See* Plaintiffs' Amended Memorandum of Law ("Pl. Mem", Dkt. 42) at 11-12. Applying a liberal construction to the search terms used, as they must, Defendant should have employed such an approach to their search. *See Nation Mag. v. United States Custom Serv.*, 71 F.3d 885, 890 (D.C. Cir., 1995), *Immigrant Def. Proj. v. United States Immig. & Customs Enf't*, 208 F.Supp.3d 520, 526 (S.D.N.Y. 2016).

Defendant explains that a front-end PIERS user can search for a specific PCZ record by entering "a person's Surname, Given Name, [date of birth] and file type (*e.g.* 'PCZ' …)", Def. Rep. at 12, and that "[t]he PIERS application references two databases when a front-end user enters this information to retrieve PCZ … data." *Id*. This confirms that the Department databases include PCZ data,[1] and that a database user can use PII to prompt the database to identify an associative relationship between those PCZ data records and individual people. An associative relationship between PCZ data and individual PII strongly implies the ability of a PIERS user with back-end database access to use database search queries and programming to generate and extract a list of the names of the individuals those PCZ records concern, as requested by Plaintiffs. *See* Declaration of Ron Schnell ("Schnell Decl.", Dkt. 41) at ¶27. This is the search that Defendant should have conducted here.

Defendant cites no statutory exemptions protecting the requested data from production as it must, *Knight First Amendment Inst. v. United States Citizenship & Immigr. Servs.*, 30 F.4th 318,

---

[1] This is also confirmed by the PIERS Privacy Impact Assessment (Dkt. 37-6), p. 1, item 3(c), listing "Panama Canal Zone (PCZ) records data" as one of the data sets integrated into the PIERS system.

327 (2d Cir., 2022) ("Agencies are required to disclose requested documents unless they fall within an enumerated exemption"), but attempts to dodge its obligation by conducting fruitless searches. Throughout Defendant's Reply, the object of its purported search is repeatedly described in the context of an already-existing document, rather than as responsive data extracted via a database query. See, *e.g.*, "the Department nonetheless searched for any index or list that could serve as a search aid" (*id*. at 3); "an indirect application that does not include any sort of index or table of the data" (*id*. at 4); "the Department … would have known of the existence of any index or list of these records" (*id*. at 5); "the Department does not maintain an 'index' in PIERS that Department staff can pull, print or otherwise generate" (*id*.). It is apparent that the object of any search performed was for an existing document, and while no such document was located, the inquiry does not end here.

A PIERS user with back-end database access should be able to generate the list Plaintiff seeks. Defendant urges that Plaintiffs' request cannot be produced due to the limited functionality of the front-end user interface of the PIERS database application, and the resulting burden this would purportedly create on Department staff if required to comply with the request. *See* Def. Rep. at 5-7, 11-13. This argument is brought into question by Mr. Schnell's view that "even when an organization has access to a specialized user interface such as PIERS, they also would need to have access to these standard [database] tools" via back-end support staff access, which could be used to fulfill Plaintiffs' request. Schnell Decl., ¶¶22-23. Reliance on the wrong tool when a better tool is available should not justify Defendant's nonproduction of responsive data.

Defendant does not purport to have conducted any searches of Department databases[2] in which, rather than searching for a document, database queries were used to isolate and compile the

---

[2] Defendant's expansion of its purported search to include Department databases other than PIERS is beset by the same problem. Ms. Ballard's confirmation that "there is no other electronic recordkeeping system on which a search

3

names and dates associated with the PCZ birth and death records. The data is clearly there and accessible, and Defendant should not be permitted to allow technical restrictions of its own design to be the basis for withholding otherwise-available records, especially where (as here) other technical solutions are available.

Defendant need not be concerned about the PCZ record data being stored in an image format. *See* Def. Rep. at 12. Declarant Westmark helpfully notes that "[t]here is a unique PRISM number for each scanned document" (*id*. at 13), meaning that each document in the PCZ database contains metadata identifying, at minimum, the PRISM number of the document and its association with the PCZ database. The association between the PCZ record and the person to whom it refers can be established through a back-end search, and aside from the name of the person to whom the PCZ record refers, no further content from the record is part of Plaintiffs' request.

Defendant makes much of the need for verification of the PCZ data due to errors introduced in the digitization process. *See* Def. Rep. at 12-13. This concern for the accuracy of the contents of the record is unnecessary where, as here, the contents of the record are not the material being requested, but only the name of the person with whom the record is associated. Insofar as any errors present are the result of problems encountered in the Department's digitization process, the Department should not be able to rely on their own errors in withholding responsive records. Additionally, nowhere in Defendant's papers do they provide any approximation of how many records may contain errors, or any details about the nature or gravity of those errors or their relevance to the instant request. Plaintiffs' citation to *Reclaim the Records v. Department of Veterans Affairs*, 18 Civ. 8449 (PAE), 2020 WL 1435220, *2020 U.S. DIST. LEXIS 53844

---

for the requested index or finding aid might reasonably result in the discovery of the requested index or finding aid" (Def. Rep. at 7; emphasis added) similarly limits its search to an already-existing compilation of names, rather than to the extraction of those names from the operative database following a search query.

(S.D.N.Y. Mar. 24, 2020) is persuasive here. In that case, the Veterans Administration chose to withhold production of deceased veterans' benefits information on the excuse that the records in the file contained a very high percentage of significant errors, including as to whether a given veteran was actually deceased. Judge Engelmayer ordered the full set of records to be released, reasoning that any Exemption 6 substantial privacy interests that may have been implicated by the release of erroneous data were outweighed by the public value of releasing such records.[3] *See id*. at *30-31. That case included the release of a great deal more information than is being sought here, including Social Security numbers; by contrast, the instant request seeks far less, and less sensitive, data.

Finally, Defendant cites a concern that any data set available would be incomplete due to the Department having abandoned their earlier digitization effort. Def. Rep. at 12-13. This should not justify withholding names associated with any records that were digitized (the number of which Defendant has not provided any estimate), even if they serve only as an incomplete index to the full file. Insofar as Defendant has made clear there are PCZ records that have been digitized in the PCZ database, a list of the names associated with those records should now be produced.

Defendant's explanations show how it conceptualized the search required here as being for an object rather than a database inquiry, but its papers also show that a database inquiry would have yielded responsive results. It is Plaintiffs' view that any search performed was misdirected, and the search that would have produced the requested records was never conducted, and Plaintiffs' cross-motion should be granted.

---

[3] It should again be noted that Defendant has not pointed to any statutory exemptions in defense of its non-production, only to the alleged absence of any responsive documents and the purported burden associated with the request.

### b. Plaintiffs' request does not involve the creation of new records.

At the risk of repetition: Plaintiff is not requesting that the Department produce <u>new</u> documents, but is requesting that they conduct a search of the PCZ database to extract and produce from it the names and birth or death dates of those individuals who were born or who died in the PCZ between 1904 and 1979. This would not amount to the creation of a new record, as Defendant's Reply asserts at 15-16, because the data sought is already in the database tables maintained by the Department and only needs to be extracted via structured search queries by an employee with appropriate access to the data involved. This is consistent with the analysis cited at Defendant's Reply, p. 16, that "if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record", and "is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests." *Nat'l Sec. Counselors v. CIA*, 898 F.Supp.2d 233, 270 (D.C.C. 2012). And notwithstanding Defendant's exceedingly narrow interpretation of the applicability of *Am. Civil Liberties Union Immigrant Rights Project v. United States*, 58 F.4th 643 (2d Cir. 2023), Plaintiffs' request would still require "codes or some kind of programming to retrieve records in a requested electronic format", which "would not amount to the creation of records". *Id*. at 659 (quotations omitted).

Defendant continues to dodge its obligation by interpreting the request as an existing document rather than as the results of a search query (*see* Def. Rep. at 15: "the requested index or inventory", "such an index"), but such an interpretation is at odds with what is required here. What is required here can and should be produced through a back-end database search calculated to locate records responsive to Plaintiffs' query. This would not entail creation of a new record.

### c. The expert testimony of Ron Schnell is helpful to the Court and should be considered.

Plaintiffs' Declarant Ron Schnell's expert testimony is being offered to explain why the obstacles to an effective search of the PIERS database presented in Defendant's declarations are

6

due to using the front-end user interface, a tool inappropriate to the task, rather than through direct back-end access to the database, and to provide useful examples of how structured search queries can be composed in a way that would obtain the kind of data being sought here and would not create an undue burden on the Department. For these limited but useful purposes, Mr. Schnell's declaration should be considered on this cross-motion.

Mr. Schnell meets the Federal Rule of Evidence 702 factors for the purposes that his expert testimony is being offered. He brings substantial technical knowledge, skill, experience, training, and education in this specific area, having designed and maintained very large databases for over 40 years, including one of the largest consumer information databases in the world, and having taught the management and securing of databases at the collegiate level. He has provided testimony in federal district courts on matters related to database design, architecture and use, and his expert testimony has been received in the Southern District of New York. *See* Schnell Decl. at ¶¶2-8.

Mr. Schnell's opinions are based on the materials listed in his Declaration at ¶11, including the Department-issued PIERS Privacy Impact Assessment, along with his professional knowledge, skills and experience. This distinguishes Mr. Schnell's opinion from the cases cited by Defendant. In *Long v. ICE*, 149 F.Supp.3d 39 (D.D.C. 2015), plaintiff's expert opinion as to the capacities of agency software was based on comparable commercial software products rather than the agency's own software and its associated operations; similarly, plaintiff's expert opinion in *In 't Veld v. Dept' of Homeland Sec.*, 589 F.Supp.2d 16 (D.D.C. 2008) was based on consumer data systems rather than the system used by that agency. Unlike in those cases, Mr. Schnell's opinions derive in part from his review of the Department's own description of the operation of the PIERS database. Finally, in *Hall v. Central Intelligence Agency*, 538 F.Supp.2d 64 (D.D.C. 2008), the court rejected plaintiff's attempt to qualify himself as an expert in order to put unhelpful and otherwise

inadmissible testimony before the court – the scenario, not in place here, to which the court was referring when disallowing "testimony to be introduced *carte blanche* merely because they are offered by an expert". *Id*. at 72.

### III. Conclusion

Defendant states that "the Department's declarations adequately explain why such a record does not exist." Def. Reply at 16. Plaintiff disagrees with this characterization of the adequacy of the declarations, for the reasons stated herein – describing a search for a document rather than conducting a database query; failing to search the PCZ database where the Department maintains electronic records relating to the PCZ; adopting the limitations presented by the design of the PIERS front-end user interface instead of applying search queries to the back-end data that would likely have produced relevant and responsive data points; and citing concerns about accuracy and incompleteness of data that have little or no bearing on the request. While Agency affidavits are entitled to a presumption of good faith, these deficits create questions about the adequacy of the explanations provided for Defendant's course of action pursuant to this request.

Defendant's motion for summary judgment should be denied. Defendant has not shown that it conducted a reasonable search calculated to locate responsive records, and failed to meet its threshold burden of resolving any ambiguities or factual uncertainties. For the reasons outlined herein and in Plaintiffs' Amended Memorandum of Law, Defendant's motion should be denied and Plaintiffs' cross-motion granted.

Dated:	August 2, 2024
	New York, New York

                                      Respectfully submitted,

                                      BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
*Attorneys for Plaintiff*

By: _____
Benjamin Meyers, Of Counsel
t: 646-496-2353
e: ben.meyers.esq@proton.me

David B. Rankin
t: 212-277-5825
e: drankin@blhny.com

9